OPINION
 

 RABINOWITZ, Justice.
 

 This appeal is from the superior court’s affirmance of the district court’s denial of
 
 *699
 
 Ebona’s motion to dismiss.
 
 [1]
 
 After the district court denied his motion to dismiss, Ebona entered a plea of guilty to the charge of operating a motor vehicle while intoxicated, in violation of AS 28.35.030,
 
 [2]
 
 while preserving the issue of the propriety of the investigatory stop which led to his arrest.
 
 [3]
 
 We affirm.
 

 During the early morning hours of June 24, 1976, Officer Smith and Corporal Marshall of the Juneau Police Department were in a police vehicle patrolling the downtown area of Juneau. At approximately 3 a. m., Officer Smith first observed Ebona walking in front of the Imperial Cafe.
 
 [4]
 
 Smith testified that from his vantage point some 25 feet away, Ebona “appeared possibly to have been under the influence ... he swayed a little bit as he walked.”
 

 Approximately one hour and twenty minutes later, Officers Smith and Marshall observed an automobile known by Corporal Marshall to belong to Ebona near the intersection of Seward and Front Streets.
 
 [5]
 
 The Ebona vehicle was followed as it proceeded on Front Street to the intersection of Front and Main, where the officers observed the vehicle stop and then turn onto Main Street.
 
 [6]
 
 As the vehicle turned onto Main Street, Officer Smith observed the car was swerving — going from the center line to the righthand edge, but at nb time did the Ebona vehicle swerve into any other lane. After traveling one block, the Ebona vehicle turned onto Egan Drive. Once on Egan Drive, Officer Smith observed that the Ebo-na vehicle continued to weave in the same manner that it had on Main Street, that is, weaving but remaining within its lane of traffic.
 

 
 *697
 
 The purpose of Rule 41(e) is to encourage plaintiffs to keep their cases moving at a reasonable speed and to allow the court to clear the calendar of cases that are not being prosecuted diligently.
 

 
 *699
 
 Officers Smith and Marshall stopped the Ebona vehicle after it had travelled approximately one half a block on Egan Drive. Ebona was then asked to get out of his vehicle. After Ebona exited, he was observed to have to support himself on the automobile, his eyes were bloodshot his speech was slurred, an odor of alcohol was on his breath, and he was weaving back and forth. After performing field sobriety .tests, Ebona was arrested for operating a motor vehicle while under the influence of intoxicating liquor.
 

 Ebona asserts that the district court erred in denying his motion to dismiss the complaint because the investigatory stop
 
 *700
 
 was violative of his constitutional rights against unreasonable searches and seizures.
 
 [7]
 
 More specifically, he contends that when the officers stopped his vehicle they did hot have specific facts sufficient to justify an investigatory stop. This contention must be evaluated in light of the pertinent facts in the record and the principles of law enunciated in
 
 Coleman v. State,
 
 553 P.2d 40 (Alaska 1976).
 

 The subject of investigatory stops was considered in some detail in
 
 Coleman.
 
 There we noted that in two previous cases
 
 [8]
 
 this court had recognized the principle:
 

 [T]hat a police officer with a reasonable suspicion that imminent public danger exists or that serious harm that has recently occurred was caused by a particular person may stop that person.
 
 [9]
 

 In
 
 Coleman,
 
 we also reviewed
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and
 
 Adams v. Williams,
 
 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), and concluded that the Alaska rule, permitting a temporary stop when the officer has a reasonable suspicion that imminent public danger exists, or serious harm to persons or property has recently occurred, is not in conflict with either the Fourth Amendment or the Constitution of the State of Alaska.
 
 [10]
 
 As one commentator has observed, the Alaska rule authorizing a temporary stop is more restrictive than the rule articulated by the Supreme Court in
 
 Terry.
 

 [11]
 

 In the course of cross-examination, Officer Smith was asked if he had any reason to believe that the Ebona vehicle had recently caused harm to persons or property. Smith responded in the negative. Smith was then further questioned as to whether he had a reasonable suspicion that imminent public danger existed because of the manner in which the Ebona vehicle was being operated. More particularly, the relevant portions of the record show the following:
 

 Q: At the time you stopped the vehicle, did you believe that he was creating a risk that was an imminent public danger?
 

 A: Sir, actually, in a case like this I like to feel that I’m more concerned for the driver’s safety since I don’t know whether he is actually under the influence or not, but if a car is reacting in this manner it’s a good idea to stop the vehicle and talk to the driver and try to determine for yourself whether or not he is sick or whether he might be under the influence and shouldn’t be on the road in either case.
 

 [[Image here]]
 

 
 *701
 
 Q: Was Mr. Ebona’s operating of his motor vehicle putting anyone else, anyone around him, any other vehicles or pedestrians in imminent danger?
 

 [[Image here]]
 

 A: . . .In answer to your previous question, I mentioned that there were several other vehicles, however, I hadn’t seen pedestrians in this area at that time. ■ I cannot honestly say that he was endangering anyone at this particular moment, since he was within the legal, far right legal lane. However, had there been . . . other vehicles there, or, perhaps, another pedestrian, he would have been endangering them, yes, sir.
 

 We think the foregoing testimony of Officer Smith, when taken together with his testimony concerning the manner in which the Ebona vehicle was being operated, satisfied the
 
 Coleman
 
 investigative stop prerequisite which requires that the officer have a suspicion that imminent public danger exists. The significant dangers to persons or property that can possibly result when the operator’s capacity to control a motor vehicle is impaired are apparent. A vehicle out of control, even on a relatively deserted street, poses a significant threat to property or individuals in proximity to the vehicle. Thus, we conclude that the record demonstrates that at the time in question Officer Smith had a suspicion that an imminent public danger existed by virtue of the manner in which the Ebona vehicle was being operated.
 

 Remaining for resolution is the question whether Officer Smith’s suspicion that an imminent public danger existed was reasonable in light of all the facts known to the officer prior to the investigatory stop of Ebona’s vehicle. Here the test is an objective one: whether the facts known to the officer at the time of the stop would cause a reasonable person to have a suspicion that the manner in which the Ebona vehicle was being operated posed a threat of imminent public danger.
 
 [12]
 
 We conclude that there is a sufficient evidentiary basis to sustain a holding that Officer Smith’s suspicion of imminent public danger was reasonable in light of all the circumstances known to him prior to the making of the investigatory stop.
 
 [13]
 

 The superior court’s affirmance of the district court’s denial of appellant Ebona’s motion to dismiss is
 

 Affirmed.
 

 [1]
 

 . Judge Gerald O. Williams was the District Court Judge.
 

 [2]
 

 . AS 28.35.030 provides:
 

 Driving while under the inñuence of intoxicating liquor or drugs.
 
 A person who, while under the influence of intoxicating liquor, depressant, hallucinogenic or stimulant drugs or narcotic drugs as defined in AS 17.10.-230(13) and AS 17.12.150(3) operates or drives an automobile, motorcycle or other motor vehicle in the state, upon conviction, is punishable by a fine of not more than $1,000, or by imprisonment for not more than one year, or by both. Upon a second conviction within five years after a first conviction under this section, the court shall impose a minimum sentence of imprisonment of not less than three days. Upon a subsequent conviction within five years after a second conviction under this section, the court shall impose a minimum sentence of imprisonment of not less than 10 days. The execution of sentence may not be suspended nor may probation or parole be granted until the minimum imprisonment provided in this section has been served, nor may imposition of sentence be suspended, except upon the condition that the defendant be imprisoned for no less than the minimum period provided in this section, nor may the punishment provided for in this section be reduced under AS 11.05.150. In addition, his operator’s license shall be revoked in accordance with AS 28.-15.210(c).
 

 [3]
 

 .
 
 See Cooksey v.
 
 State, 524 P.2d 1251 (Alaska 1974). In
 
 Oveson v. Municipality of Anchorage,
 
 574 P.2d 801, 803 n.4 (Alaska 1978), we clarified
 
 Cooksey
 
 and made the prospective holding that future
 
 Cooksey
 
 type appeals must be explicitly conditioned upon appellant’s reservation of the right to appeal, and it must appear that resolution of the issue reserved will be dispositive of the entire case.
 

 [4]
 

 . Corporal Marshall had pointed out appellant to Officer Smith.
 

 [5]
 

 . At the time the officers could not tell who was the driver of the vehicle.
 

 [6]
 

 . At this intersection, Main Street has two lanes of traffic in each direction.
 

 [7]
 

 . The fourth amendment to the United States Constitution states, in part:
 

 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ....
 

 Article I, section 14 of the Alaska Constitution provides, in part:
 

 The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not be violated.
 

 [8]
 

 . Maze
 
 v. State,
 
 425 P.2d 235 (Alaska 1967);
 
 Goss v. State,
 
 390 P.2d 220 (Alaska 1964),
 
 cert. denied,
 
 379 U.S. 859, 85 S.Ct. 118, 13 L.Ed.2d 62 (1964).
 

 [9]
 

 .
 
 Coleman v. State,
 
 553 P.2d 40, 43 (Alaska 1976).
 

 [10]
 

 .
 
 Id.
 
 at 46. In
 
 Terry v. Ohio,
 
 the Supreme Court adopted the investigatory stop concept, but articulated a different and lesser standard than that of
 
 Coleman, Maze
 
 and
 
 Goss,
 
 for investigatory stops. In
 
 Terry,
 
 the Supreme Court stated that while probable cause was not required for an investigatory stop, such a stop was still subject to the requirements of the fourth amendment’s prohibition against unreasonable searches and seizures. In
 
 Terry,
 
 the Supreme Court articulated the following:
 

 [T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion . [a]nd in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search “warrant a man of reasonable caution in the belief’ that the action taken was appropriate?
 

 Terry v. Ohio,
 
 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968) (footnotes omitted).
 

 [11]
 

 .J. M. Feldman,
 
 Search and Seizure in Alaska, A Comprehensive Review,
 
 7 U.C.L.A.— Alaska L.Rev. 75, 102-05 (1977).
 

 [12]
 

 . By way of summary, the relevant facts are:
 

 (1) Approximately an hour and twenty minutes previous, Officer Smith, while driving the downtown area of Juneau on patrol, saw from 25 feet away a man swaying a bit as he walked and appearing possibly under the influence.
 

 (2) The car which Officer Smith followed was identified by his fellow officer as belonging to the man they had seen earlier that morning although neither officer at the time could ascertain who was driving the car.
 

 (3) The car was followed for a few blocks before being stopped, during which time it was observed by Officer Smith to weave back and forth a few times while on two different streets though remaining in its lane of traffic.
 

 (4)The operator of the vehicle, during the time it was followed, did not violate any traffic rules and did make two correct turns.
 

 [13]
 

 .
 
 Compare State v. Lange,
 
 255 N.W.3d 59, 61-63 (N.D.1977);
 
 People v. Dearstyne,
 
 50 A.D.2d 1029, 377 N.Y.S.2d 269, 270 (Sup.Ct.1975);
 
 People v. Beal,
 
 44 Cal.App.3d 216, 118 Cal.Rptr. 272, 273 (1974);
 
 State
 
 v.
 
 Ellanson,
 
 293 Minn. 490, 198 N.W.2d 136, 137 (1972).