**James R. LARSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 7167.**

Court of Appeals of Alaska.

Oct. 7, 1983.

George S. Harrington, Jr., Cordova, for appellant.

Victor C. Krumm, Dist. Atty., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

On September 1, 1982, James R. Larson was convicted of Driving While Intoxicated (DWI) in violation of AS 28.35.030(a). Larson then brought this appeal, in which he challenges the validity of the stop that resulted in his arrest. We affirm.

Larson was a passenger in a car stopped by Officer Richard Reid of the Cordova Police Department early in the morning of July 12, 1982. When Officer Reid first observed Larson's car, it was stopped in the middle of a dirt road. Larson was behind the wheel. According to Officer Reid, Larson spoke briefly with two pedestrians on the left side of the road, then drove north, on the wrong side of the road.

These actions aroused Officer Reid's curiosity, and he followed Larson. Larson stopped his car again at a distance about two blocks north of his encounter with the first pedestrians and apparently asked two more pedestrians if they wanted a ride. As Larson drove away from these pedestrians, he veered towards the edge of the road; shortly thereafter, he missed hitting another group of pedestrians by only two or three inches.

Larson's car then returned to the right lane, and drove around several curves before approaching two more pedestrians who were walking on the right side of the road. Officer Reid saw one of the pedestrians get into the driver's seat while Larson slid over into the passenger side of the car. The front seat passenger and the other pedestrian climbed into the back seat. The new driver of the car proceeded around a curve, stopped at an intersection, and then made a left turn onto First Avenue, where he was stopped by Officer Reid. Officer Reid went directly to Larson and asked to see his drivers license and vehicle registration. Of-

ficer Reid then ordered Larson to get out of the car and arrested him for DWI. According to Officer Reid, at the time of arrest Larson's eyes were bloodshot, his speech was slurred, and his balance was unsteady. Larson consented to a breathalyzer test, which resulted in a reading of 0.19 per cent by weight of alcohol in his blood.

Larson moved to suppress all evidence of his intoxication and of his breathalyzer result, contending that Officer Reid had neither probable cause to arrest, nor reasonable suspicion to justify an investigatory stop. A hearing on this motion was held on August 31, 1982. The state conceded that Officer Reid lacked probable cause to arrest Larson before the car was stopped, but argued that Officer Reid had made a valid investigatory stop. District Court Judge John Bosshard found that the state had met its burden of establishing that Officer Reid had a reasonable suspicion that Larson's driving posed an imminent danger to public safety and denied the motion to suppress.

■ The validity of investigatory stops in Alaska is governed by the supreme court's decision in *Coleman v. State*, 553 P.2d 40, 46 (Alaska 1976). *Coleman* adopted a more stringent standard for determining the validity of a stop than that established in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), since *Coleman* permitted investigatory stops only in cases where a police officer has "a reasonable suspicion that imminent public danger exists or serious harm to persons or property has recently occurred." *Coleman v. State*, 553 P.2d at 46. *Coleman* adopted the objective test found in *Terry* for determining whether an officer's suspicion is in fact reasonable:

> [T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. . . . And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search

"warrant a man of reasonable caution in the belief" that the action taken was appropriate?

*Coleman v. State*, 553 P.2d at 45 (quoting *Terry v. Ohio*, 392 U.S. at 21–22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906) (footnote omitted).

■ We agree with Judge Bosshard's finding that Officer Reid had a reasonable suspicion, based upon his observations, that an imminent public danger existed justifying the stop. In *Ebona v. State*, 577 P.2d 698 (Alaska 1978), the supreme court considered the validity of a *Coleman* stop made by police who suspected that Ebona was intoxicated. The officers had seen Ebona about an hour and one-half before the stop, and Ebona appeared to be intoxicated at that time. The same officers later saw a vehicle, which they knew to be Ebona's. As they followed this car, they noticed that it was swerving from the center line to the right-hand edge of its lane, but not swerving into the adjacent lane. After continuing to follow Ebona for another block and one-half, the officers stopped the car and arrested Ebona for operating a motor vehicle while under the influence of intoxicating liquor. *Id.* at 698. The supreme court rejected Ebona's claim that the facts known to the officers were not sufficient to justify a *Coleman* stop:

> The significant dangers to persons or property that can possibly result when the operator's capacity to control a motor vehicle is impaired are apparent. A vehicle out of control, even on a relatively deserted street, poses a significant threat to property or individuals in proximity to the vehicle.

*Id.* at 701.

Larson attempts to distinguish *Ebona* from the facts of his case by noting that Larson was not driving erratically, and that, due to the narrowness of the road and the number of pedestrians in the area, Judge Bosshard specifically found that Larson's driving did not amount to a citable traffic violation. Larson notes that Ebona was driving on a marked highway with two

traffic lanes going in each direction, while in the present case, Larson's weaving occurred on a narrow, unmarked roadway. Larson also maintains that, in his case, unlike *Ebona*'s case, there had been no prior observation indicating possible intoxication. We are not persuaded by these distinctions.

First, the *Ebona* court expressly noted that Ebona did not violate any traffic rules during the time he was followed. *Ebona v. State*, 577 P.2d at 701 n. 12. Second, the fact that there was no prior independent knowledge of Larson's probable intoxication does not detract from the reasonableness of Officer Reid's belief that Larson was intoxicated. At the suppression hearing Officer Reid testified that he suspected Larson was intoxicated because: 1) Larson veered within two or three inches of several pedestrians; 2) Larson drove on the wrong side of the road for two-thirds of the distance he was followed; 3) pedestrians twice refused to get in the car with Larson; and 4) a pedestrian took over the driving from Larson. We believe that, given these facts, Officer Reid's suspicion that Larson was possibly intoxicated and posed an imminent danger while driving was reasonable. *Coleman v. State*, 553 P.2d at 45.

This conclusion is supported by our recent decision in *State v. Moran*, 667 P.2d 734 (Alaska App.1983). In *Moran*, we reversed the district court's finding that an investigatory stop leading to an arrest for driving while intoxicated was invalid. The district court concluded that the *Coleman* requirement of "imminent public danger" was not satisfied because the arresting officer did not state that Moran had endangered anyone prior to the stop. We rejected this interpretation of *Coleman*, stating that

[The trial judge] apparently believed that a policeman may not make an investigatory stop unless he sees the person he ultimately stops *do* something dangerous. This is an incorrect reading of *Coleman*. It is sufficient if the officer observes facts which lead him to reasonably believe that the person to be stopped *is* dangerous.

*State v. Moran*, 667 P.2d at 736.

Since we have concluded that Officer Reid had a reasonable suspicion that Larson was intoxicated and posed an imminent danger to the public while driving, the only remaining question is whether the requisite element of imminent danger terminated when Larson allowed an apparent stranger to drive the car in his place. As to this issue, Judge Bosshard specifically found that it was likely that Larson would have resumed driving at some later point, and that Officer Reid was not unreasonable in believing that the change of drivers did not eliminate the need to make an investigatory stop. We do not believe this finding to be clearly erroneous. We conclude that, under *Coleman*, *Ebona* and *Moran*, Larson's arrest was the product of a lawful investigatory stop.

The conviction is AFFIRMED.