**Dennis R. EFFENBECK, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–597.

Court of Appeals of Alaska.

May 31, 1985.

Carol A. Brenckle, Asst. Public Defender, Kenai, and Dana Fabe, Public Defender, Anchorage, for appellant.

Shannon D. Turner, Asst. Dist. Atty., Thomas Wardell, Dist. Atty., Kenai, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

SINGLETON, Judge.

On February 28, 1984, Dennis R. Effenbeck was stopped and arrested for driving while intoxicated. AS 28.35.030. He subsequently moved to suppress "all evidence derived from" the stop, including a breathalyzer result of .15%, on the grounds that the stop was illegal. After an evidentiary hearing, Magistrate Brigitte McBride denied the motion. Effenbeck entered a no contest plea, but preserved his right to appeal the magistrate's ruling. *Oveson v.*

*Anchorage,* 574 P.2d 801 (Alaska 1978); *Cooksey v. State,* 524 P.2d 1251 (Alaska 1974). We affirm.

At the evidentiary hearing, the state called Kenai Police Officer Ronald Carter. Officer Carter testified that at 11:33 p.m. the department's dispatcher contacted him by radio. The dispatcher told Officer Carter that someone had called from a gas station to report a drunk driver. The dispatcher told Officer Carter that a brown Ford, Alaska license number BJL–777, stopped and bought fuel at a Union 76 station, then headed north on the Kenai Spur Highway, and that the driver was intoxicated. Officer Carter did not recall if the dispatcher told him the caller's name, but he stated that the dispatcher had run a computer check on the car being driven by an allegedly intoxicated person to determine the name of the vehicle's registered owner and the vehicle's color.

According to his testimony, Officer Carter drove north on the Spur Highway and eventually spotted a car in the parking lot of a bar which matched the description he had been given. When the car pulled back onto the highway, Officer Carter followed and immediately made the stop. Twenty-two minutes had elapsed since Officer Carter received the call from the dispatcher.

This was the extent of the testimony on direct examination, and Effenbeck's attorney asked no questions on cross-examination. Based upon this evidence, the prosecutor argued that Officer Carter had known more than enough to justify an investigatory stop. Defense counsel pointed out that the call to the dispatcher was apparently made in connection with a local program designed to encourage the reporting of drunk drivers, and argued that since anonymity is guaranteed under the program, it is easily abused.[1] The magistrate stated that she was concerned about potential abuse of the program, but held that in the instant case the information possessed by the officer was sufficient to justify the stop.

■ An investigatory stop in Alaska may only be conducted where there are specific and articulable facts which create "a reasonable suspicion that imminent public danger exists, or serious harm to persons or property has recently occurred." *Ebona v. State,* 577 P.2d 698, 700 (Alaska 1978); *Coleman v. State,* 553 P.2d 40, 46 (Alaska 1976). The danger created by one who drives while intoxicated is sufficient to satisfy that portion of the test. *Ebona,* 577 P.2d at 701.

■ In a number of cases, we have discussed the quantum of evidence which an officer must have before he may make an investigatory stop of someone suspected of drunk driving. *See, e.g., Romo v. Anchorage,* 697 P.2d 1065 (Alaska App., 1985); *Larson v. State,* 669 P.2d 1334 (Alaska App.1983); *State v. Moran,* 667 P.2d 734 (Alaska App.1983). We believe that Officer Carter could consider the information which he received from the dispatcher in formulating reasonable suspicion. *See Mattern v. State,* 500 P.2d 228, 232–33 (Alaska 1972) (finding probable cause to arrest based on citizen informant's tip relayed to the arresting officer by a police dispatcher); *see also United States v. Hensley,* — U.S. ——, ——, 105 S.Ct. 675, 681–83, 83 L.Ed.2d 604, 612–15 (1985); *Howes v. State,* 503 P.2d 1055, 1059 (Alaska 1972); 1 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.5, at 619 (1978 & Supp.1985). Reasonable suspicion can be based upon an informant's tip. *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). The tip should, however, have some indicia of reliability. In evaluating the tip it is wise to bear in mind the analogous test which the United States Su-

---

1. Effenbeck states in his brief that the call was made under the R.E.D.D.I. (Report Every Drunk Driver Immediately) program. According to Effenbeck, the program went into operation on the Kenai Peninsula on February 1, 1984. According to information distributed by the pro-

gram's administrators, callers need not identify themselves, but are asked to state the time and location they observed the suspected drunk driver, the direction of travel, and the make, color, and, if possible, the license plate number of the vehicle.

preme Court developed for verifying informant's tips where a search warrant is involved. *See Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). *See also Kralick v. State*, 647 P.2d 1120, 1122–25 (Alaska App.1982).[2] As LaFave points out:

> [U]nder the two-pronged test of *Aguilar v. Texas* information from an informant will amount to that probable cause needed to support a full arrest or issuance of a search warrant only if there are revealed (i) the underlying circumstances showing reason to believe that the informant is a credible person, and (ii) the underlying circumstances showing the basis of the conclusions reached by the informant. As for the first of these two requirements, it may be met by showing that this informant has previously given accurate information or, perhaps, by showing that his statement was against his own penal interest. As for the second, it may be directly established by the informer indicating that he has personal knowledge or by his specifying some other credible source, but if this is not done it will suffice if the informant has given so many details that it may be inferred that he obtained his information in a reliable way. Yet another way of satisfying the first requirement is by corroboration of a great many details from the informer's story, and of course there will sometimes arise situations in which the corroboration is so substantial that the probable cause is, as a practical matter, based upon the officer's direct observations, in which case it will not matter that neither of the two prongs of *Aguilar* are directly satisfied.

3 W. LaFave, *supra*, § 9.3, at 95–96 (footnote omitted).

In the instant case, the trial court could reasonably infer that the informant had personal knowledge. He apparently called the dispatcher from a gas station and stated that the allegedly intoxicated driver of a vehicle stopped and bought fuel at the same gas station. The statement was therefore anchored in time and place negating any risk that the information furnished was stale and that the suspect was no longer dangerous. *See State v. Temple*, 65 Hawaii 261, 650 P.2d 1358, 1364 (1982). The informant accurately described the vehicle and the police located it shortly thereafter. While a statement that a driver was intoxicated is in part conclusory, it is the kind of shorthand statement of fact that lay witnesses have always been permitted to testify to in court. *See A.R.E. 701. See, e.g.*, E. Cleary, *McCormick on Evidence* § 11 (2d ed. 1972); 7 *Wigmore on Evidence* §§ 1919 & 1974 (Chadbourn Revision 1978).

■ It is more difficult to satisfy the first prong of the *Aguilar* test—establishing the credibility of the informant—where the informant is anonymous. Generally, the cases distinguish between two kinds of informants: "citizen informants" and "police informants." The former consist of ordinary citizens, including victims of crime, who aid the police because of concern for society or for their own safety. There is less need for establishing the credibility of such an informant. *See, e.g., Erickson v. State*, 507 P.2d 508, 517–19 (Alaska 1973). In contrast, the credibility and reliability of a police informant must be shown. In *Erickson*, the supreme court adopted with approval the following statement from a Wisconsin case, *State v. Paszek*, 50 Wis.2d 619, 184 N.W.2d 836, 842 (1971):

> A different rationale exists for establishing the reliability of named 'citizen-informers' as opposed to the traditional idea of unnamed police contacts or informers who usually themselves are criminals. Information supplied to officers by the traditional police informer is not given in the spirit of a concerned citizen, but often is given in exchange for some concession, payment, or simply out

**2.** *But cf. Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, *reh'g denied*, ── U.S. ──, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983) (rejecting the two-pronged test). *See also* 1 W. LaFave, *supra*, § 3.3.

of revenge against the subject. The nature of these persons and the information which they supply convey a certain impression of unreliability, and it is proper to demand that some evidence of their credibility and reliability be shown. One practical way of making such a showing is to point to accurate information which they have supplied in the past.

*Erickson,* 507 P.2d at 517 (footnote omitted).

Somewhat surprisingly, courts faced with anonymous informants in contexts similar to this one have been willing to characterize the informant as a citizen informant. *See, e.g., Campbell v. State Department of Licensing,* 31 Wash.App. 833, 644 P.2d 1219, 1220 n. 1 (1982). Upon closer examination, however, the reason becomes clear. Informants from the criminal milieu are distrusted because they often give evidence against the defendant: (1) for pay; (2) for immunity from punishment; or (3) for personal advantage or vindication. *See Evans v. State,* 550 P.2d 830, 843 & n. 35 (Alaska 1976). Since the informant here is anonymous and his tip conveyed by phone through a police dispatcher, it is unlikely that he gave information in expectation of any one of these rewards. While the possibility of an anonymous informant's hostility to the defendant motivating a false claim is always present, it is of less significance in the context of a R.E.D.D.I. report than other considerations. A primary reason for distrusting anonymous informants is the fear that there will in fact be no informant and that the officer will utilize a fictional informant to account for information which in fact was illegally obtained or to justify a search or seizure based on an unsupported hunch that ultimately proved accurate. The court must always be sensitive to the risk that an alleged informant is fictitious. Where the circumstances reduce the risk that the police have fabricated an informant in order to base a search or seizure on illegally obtained evidence or to justify a successful hunch, courts are more likely to classify an anonymous informant as a "citizen informant." *See, e.g., Commonwealth v. An-*derson, 366 Mass. 394, 318 N.E.2d 834 (1974), which LaFave describes as follows:

[P]olice at the Boston Greyhound Bus terminal were summoned by a dispatcher and handed a note saying that there was a black man wearing a blue hat and carrying a brown paper bag who had a gun and narcotics on the bus from New York to Boston. The dispatcher explained that the note had been given him by a bus driver, who in turn received it from a man in a toll booth who said it had been thrown into the booth by someone on a New York to Boston bus, and who passed the other bus and arrived at the terminal ahead of it. The bus from which the note had been thrown then arrived, and the first passenger to exit was a black man with a blue hat carrying a brown paper bag, who walked briskly when he saw the police on the scene. In upholding the stop which was then made, the court properly emphasized (i) that the police could not be faulted for not having more details, and (ii) that there was no risk of fabrication.

LaFave then quotes from the case:

In this case we are of the opinion that there exists indicia of reliability to sustain the police officer's actions. First, the inference could be drawn from the note that the informant was on the same bus as the defendant and very probably based his information on personal observations. The brevity and the lack of detail of the note are explainable by a need to act quickly in getting the message to the toll booth operator for the authorities. It is not unimportant that the message was in writing and was passed on by some disinterested citizen, thus eliminating the possibility of a police fabrication which is a principal concern in assessing the propriety of a threshold inquiry launched by an anonymous tip.

3 W. LaFave, *supra,* § 9.3, at 102–03, *quoting Anderson,* 318 N.E.2d at 838. The facts here are substantially similar to those in *Anderson.* The informant reported

from a gas station that Effenbeck stopped for gas and was intoxicated. The obvious inference is that he observed Effenbeck personally and reached the conclusion that Effenbeck was intoxicated based on that observation. The brevity and lack of detail of the description are explainable by the informant's need to act quickly to get the message to the police so that they could intercept Effenbeck before he injured someone. Finally, the circumstances virtually eliminate the possibility of police fabrication.

A further comment by Professor LaFave is apt:

> Finally, it must be acknowledged that stoppings for investigation are not all of one kind and that in some instances the need for immediate action may be so great that substantial doubts about the reliability of the informant or his information cannot be permitted to stand in the way of prompt police action. But the fact that this is so in certain extraordinary situations is not to suggest that the same sacrifice of reliability must be made across the board in stopping-for-investigation cases.

3 W. LaFave, *supra,* § 9.3, at 103. LaFave goes on to distinguish cases such as this one where police action is necessary to intercept and prevent injurious conduct and cases where an investigatory stop is made to seize drugs or gambling paraphernalia. *Id.* at 103–04. In Alaska, our supreme court has essentially limited investigatory stops to the first situation. *See Ebona v. State,* 577 P.2d 698, 700 (Alaska 1978); *Coleman v. State,* 553 P.2d 40, 43 (Alaska 1976). Given the information the officer had, corroborated in part by his observing Effenbeck leaving a bar parking lot, we are satisfied that the exigencies of this situation warranted the investigatory stop.

The judgment of the district court is AFFIRMED.