Thomas R. GIBSON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–425.

Court of Appeals of Alaska.

Oct. 25, 1985.

Rehearing Denied Nov. 11, 1985.

John M. Murtagh, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Thomas R. Gibson was convicted after jury trial of misconduct involving a controlled substance (cocaine) in the fourth degree, a class C felony. AS 11.71.-040(a)(3)(A). He appeals, contending that the trial court erred in failing to suppress the cocaine, which he alleges was seized pursuant to an illegally obtained search warrant. We affirm.

## FACTS

In July 1983, Sgt. Bowman, an Alaska State Trooper, was assigned to the Anchorage International Airport Drug Enforcement Detail. At about 9:50 a.m. on July 18th, a Wien Airlines employee called the troopers' Airport Detail office to report that she had received a package that she thought should be checked by a scent-detection canine. The suspected package, which had been received at 9:40 a.m., was relatively small and was wrapped in brown paper with fiber tape over two ends and across the bottom. The shipper was listed as Sally Gibson, at an address in Anchorage; the addressee was Tom Gibson at a post office box in Barrow. The commodity description of the package was "tea." The Wien employee had become suspicious of the package because of its size and weight,

and the shipper's willingness to ship "tea" by a private air carrier for $21, as opposed to using the less costly United States mail or other available means of shipping.

Sgt. Bowman took the package from the Wien counter to the troopers' Airport Detail office, about a two minute walk. He checked in the Anchorage area phone directory and found no Sally Gibson listed. He also found that the Anchorage address given as the return address on the package did not exist as such, and that the phone number listed on the air bill belonged to someone other than Sally Gibson. At 10:13 a.m. the package was put before scent-detection canine "Meik" and he "alerted" to it.

Sgt. Bowman prepared an affidavit and drove to the Anchorage court building to apply for a search warrant, which was granted at about noon that day. Sgt. Bowman then opened the package at the trooper office and found one-half ounce of white powder which field tested positively for cocaine.

Sgt. Bowman rewrapped a small amount of the cocaine in the package and returned it to Wien for a "controlled delivery" at Barrow. He notified North Slope Borough Public Safety of its arrival. Thomas Gibson picked up the package the next morning and officers followed him to his apartment.

## DISCUSSION

Gibson concedes for purposes of argument that the magistrate had probable cause to issue a warrant to open the package once the trained dog "alerted" to it. Gibson does not contend that the dog sniff constituted a search in this case. *See United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). Rather, Gibson makes two other arguments. First, he contends that the state troopers did not

have a reasonable suspicion justifying their temporary detention of the package for purposes of the canine sniff. Gibson is particularly concerned that the police did not bring the dog to the package but rather brought the package to the dog. Secondly, Gibson contends that even if the state troopers had reasonable suspicion, it was insufficient to justify their actions. Gibson argues that the Alaska State Constitution [1] requires a finding of probable cause before police may temporarily seize a package. We will deal with Gibson's arguments in order.

### I.

In *State v. Moran*, 667 P.2d 734 (Alaska App.1983), we considered the concept of "reasonable suspicion" as a predicate for an investigatory stop of a person. We recognized that the concept of reasonable suspicion, like the analogous concept of probable cause, was vague. We believed, however, that the phrase had sufficient content to be a meaningful standard. We relied upon Professor LaFave for the following analysis,

By contrast [to probable cause], as is suggested by the reference in *Terry* [*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] to a reasonable belief "that criminal activity *may* be afoot," it would seem clear that the more-probable-than-not standard is never applicable to a brief stopping for investigation. Rather, it will suffice that there exists a substantial *possibility* that criminal conduct has occurred, is occurring, or is about to occur. [Emphasis in original.]

*Moran*, 667 P.2d at 735–36, *quoting* 3 W. LaFave, *Search & Seizure* § 9.3 at 65–66 (1978). We went on to accept LaFave's conclusion that the proper question was whether the officer could reasonably surmise that the defendant was engaged in

---

**1.** Article I, Section 14 of the Alaska Constitution provides:

Section 14. Searches and Seizures. The right of the prople to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and sei-

zures, shall not be violated. No warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

criminal activity; that is, whether he could form the notion on slight proof. 667 P.2d at 736.

■ In *Moran,* and in an earlier case, *Howard v. State,* 664 P.2d 603, 609–11 (Alaska App.1983), we emphasized that reasonable suspicion cannot be evaluated in a vacuum but must take into account the totality of the circumstances. Among the circumstances that are highly relevant are the investigative steps the officers intend to take to resolve their suspicion. The more intrusive the police actions become in regard to the defendant's privacy and possessory rights and the more prolonged the seizure, the greater the fund of information they must be acting upon. In contrast, where the intrusion is relatively slight and would quickly result in information inculpating or exculpating the defendant, a lesser quantum of information will suffice. Thus reasonable suspicion and probable cause are not discrete concepts, they exist along a continuum of increasing certainty.

■ Applying these standards to the instant case, we are satisfied that Sgt. Bowman had a reasonable suspicion sufficient to justify a temporary detention of the package for purposes of a canine sniff. When Sgt. Bowman took the package for further investigation he knew the following: the package was relatively small—seven and one-half inches long, two and three-quarters inches deep, and four inches high. It was wrapped in brown paper with fiber tape over two ends and across the bottom. It was being shipped to a post office box in Barrow by expedited delivery at a cost of $21 and the contents were listed as tea. Immediately after seizing the package Sgt. Bowman was able to determine that Sally Gibson was not listed in the area directory, that the alleged return address did not exist, and that the phone number listed in the air bill was not Sally Gibson's. The intrusion was relatively slight and for the limited purpose of subjecting the package to a dog sniff. Under these circumstances we find adequate reasonable suspicion to justify the investigatory steps taken.

## II.

Gibson's stronger argument is that reasonable suspicion is an inappropriate basis for interfering with a shipper's expectation of privacy in his or her shipment. Gibson recognizes that the United States Supreme Court would permit the temporary seizure of Gibson's package that took place here. *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *United States v. Van Leeuwen,* 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970). He recognizes that those cases rely in part on an extension of arguments accepted in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), which authorize a brief stop and frisk of an individual based upon reasonable suspicion that he is about to engage in criminal activity and may be armed. While Alaska has recognized the investigatory stop exception to the requirement that any search or seizure be based upon a warrant issued upon probable cause, Gibson vigorously argues that in adopting the investigatory stop doctrine the Alaska Supreme Court has substantially limited it. *See Ebona v. State,* 577 P.2d 698 (Alaska 1978); *Coleman v. State,* 553 P.2d 40 (Alaska 1976). Gibson argues that *Coleman* and *Ebona* adopt the dissenting position of Justice Brennan in *Adams v. Williams,* which would limit the stop and frisk doctrine to crimes of violence or, at the very least, crimes involving individuals who may be armed and dangerous. As Gibson interprets the Alaska cases, the stop and frisk doctrine may not be applied to those suspected of possessing small quantities of controlled substances. Therefore he concludes that a stop and frisk *a fortiori* cannot apply to a package believed to contain a controlled substance which is not in the immediate possession of its shipper. Since the rationale for the *Terry* doctrine is the officers' need to protect themselves against violence from the shipper, Gibson reasons it necessarily follows that if the shipper is not present there is no risk of

danger and no justification for a stop. Gibson sees an expansion of the *Terry* doctrine to include the instant case as leading to a general "reasonableness" test for searches and seizures under the state and federal constitutions. Since determinations of reasonableness in a given case are largely subjective, Gibson argues, adopting a reasonableness test in this case will subject shippers like Gibson to the uncontrolled discretion of the police, virtually eliminating constitutional protection. *Cf. State v. Jones,* 706 P.2d 317 (Alaska 1985) (rejecting general reasonableness test for evaluating supporting affidavits for search warrants under Alaska Constitution).

Gibson has misunderstood *Coleman* and *Ebona.* Properly understood the restrictions they place on investigatory stops are aimed at preventing unreasonable interference with the "person" of a suspect. Where a police officer encounters a suspect on the city streets and stops him for investigation, two potential violations of the constitution are present. First is the stop itself, which may constitute a seizure of his person, and second is the frisk for weapons, which constitutes a search. In his dissent to *Adams v. Williams,* Justice Brennan expressed his fear that allowing frisks of suspects on reasonable suspicion that they might possess a weapon created a risk of "pretext searches" in which officers would offer a feigned fear of violence in order to justify shaking down potential drug possessors, 407 U.S. at 151–53, 92 S.Ct. at 1926–27, 32 L.Ed.2d at 620–21. Thus Brennan's argument as advanced and as adopted by the Alaska Supreme Court relates primarily to the "frisk" aspect of the stop and frisk, not the initial stop. *But see Effenbeck v. State,* 700 P.2d 811, 815 (Alaska App.1985) (investigatory stop doctrine does not apply to seizure of drugs from person stopped); *Metzker v. State,* 658 P.2d 147, 149 (Alaska App.1983) (suggesting that in Alaska *Terry* stops should be limited to crimes of violence).

The Alaska Supreme Court has never specifically addressed the issue presented in this case: the temporary detention of packages on less than probable cause where the package is not in the immediate possession of its owner. We are satisfied that that issue was correctly decided in *United States v. Van Leeuwen,* 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970). There the Supreme Court upheld the temporary detention while a search warrant was obtained of a package mailed first-class, based upon reasonable suspicion. As one commentator has said, *"Van Leeuwen* was an easy case for the Court because the defendant was unable to show that the invasion [temporary detention of the package while a search warrant was obtained] intruded upon either a privacy interest in the contents of the packages or a possessory interest in the packages themselves." 3 W. LaFave, *Search & Seizure* § 9.6 at 107 (Supp.1985). As Justice Brennan has pointed out, "Unlike the dispossession of hand baggage in a passenger's custody, which constitutes a substantial intrusion, the mere detention of mail not in his custody or control amounts to at most a minimal or technical interference with his person or effects, resulting in no personal deprivation at all." *United States v. Place,* 462 U.S. 696, 717 n.5, 103 S.Ct. 2637, 2650 n.5, 77 L.Ed.2d 110, 128 n.5 (1983) (Brennan, J., concurring in the result), *quoting United States v. Place,* 660 F.2d 44, 52–53 (2d Cir.1981).

■ Considering the totality of the circumstances, the brief duration of the temporary detention while Sgt. Bowman verified the inaccurate return address and telephone number and subjected the package to the dog sniff, we find no violation of the state or federal constitutions.

The judgment of the superior court is AFFIRMED.