**Michael J. DIONNE, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A-2486.**

Court of Appeals of Alaska.

Jan. 6, 1989.

---

Catherine M. Easter, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

James E. Torgerson, Asst. Dist. Atty., Dwayne W. McConnell, Dist. Atty., Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

## OPINION

Before BRYNER, C.J., and SINGLETON, J.

SINGLETON, Judge.

Michael J. Dionne pled no contest to driving while intoxicated (DWI), AS 28.35.030, and driving with license suspended (DWLS), AS 28.15.291(a), while preserving the right to appeal the denial of his motion to suppress the fruits of an alleged improper stop. *Cooksey v. State,* 524 P.2d 1251 (Alaska 1974). We affirm.

At the hearing on the motion to suppress, Airport Police Officer Janice Jones testified that while she was patrolling the upper ramp of the domestic terminal of the Anchorage International Airport, an individual informed her that the driver of a Ford station wagon, which was located approximately ten feet away, was "possibly intoxicated." The informant indicated that he had reached this conclusion after observing the driver for "some time now." When oncoming traffic prevented the vehicle in question from entering the stream of departing traffic, Jones decided to approach the vehicle to investigate. As Jones

walked in front of the car, she observed that its headlights were not on. Jones contacted the driver, confirmed that the headlights were working, and asked the driver to identify himself. In conversing with Dionne, Jones noticed that Dionne's speech was slow and slurred. Another officer who had recently arrived on the scene administered field sobriety tests, which Dionne failed. Dionne was subsequently arrested.

■ Dionne moved to suppress all evidence obtained as a result of the stop on the grounds that the state failed to demonstrate the reliability of the citizen informant and failed to show that the citizen's tip was based on personal knowledge, as required under *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) and *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1967). Dionne points out that Alaska has adopted the two-part *Aguilar–Spinelli* test. *See State v. Jones,* 706 P.2d 317 (Alaska 1985). Dionne raises the same arguments on appeal.[1]

■ An investigatory stop in Alaska may only be conducted where there are specific and articulable facts which create a "reasonable suspicion that imminent public danger exists, or serious harm to persons or property has recently occurred." *Ebona v. State,* 577 P.2d 698, 700 (Alaska 1978); *Coleman v. State,* 553 P.2d 40, 46 (Alaska 1976). It is not necessary that the officer observe someone do something dangerous; it is enough that the officer have reason to suspect that the person to be stopped is dangerous. We have previously held that the danger created by one who drives while intoxicated is sufficient to satisfy the imminent public danger requirement. *State v.*

---

1. The state argues that Dionne was not stopped until he was asked to exit his vehicle and that the police had a reasonable suspicion that Dionne was intoxicated after first observing him. *See Romo v. Anchorage,* 697 P.2d 1065, 1067–68 (Alaska App.1985). In contrast, Dionne argues that he was stopped when Jones first approached him and got his attention. The trial court did not make an express finding of the exact time at which Dionne was stopped. This was error. Alaska R. of Crim.P. 12(d); *Burks v.*

*State,* 706 P.2d 1190, 1191–92 (Alaska App.1985). We are satisfied that Jones had a reasonable suspicion of possible intoxication at the time she first approached Dionne. It is therefore unnecessary for us to remand this case for an express finding of the point in time at which Dionne was first "stopped." For the same reason, it is unnecessary for us to determine, as the state requests, whether Dionne was or was not stopped as a matter of law until he was asked to leave his vehicle.

*Moran,* 667 P.2d 734, 735 (Alaska App. 1983). Consequently, a reasonable suspicion that a person is intoxicated and in control of a vehicle will authorize an investigatory stop.

■ Reasonable suspicion may be based on an informant's tip. *Adams v. Williams,* 407 U.S. 143, 147–48, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972). The underlying circumstances known to the officer should show reason to believe that the informant is a credible person, and should reveal to the officer the basis for the conclusions reached by the informant. *Effenbeck v. State,* 700 P.2d 811, 813 (Alaska App.1985) (relying in part on *Aguilar*). In *Erickson v. State,* 507 P.2d 508, 517 (Alaska 1973), the Alaska Supreme Court indicated that when a citizen provides information, there is less need for establishing the credibility of the informant. In their reasoning, the court pointed out that citizen informants generally contact the police out of a concern for society and the safety of its members:

A different rationale exists for establishing the reliability of named "citizen informers" as opposed to the traditional idea of unnamed police contacts or informers who usually themselves are criminals. Information supplied to officers by the traditional police informer is not given in the spirit of a concerned citizen, but often is given in exchange for some concession, payment, or simply out of revenge against the subject. The nature of these persons and the information which they supply convey a certain impression of unreliability, and it is proper to demand that some evidence of their credibility and reliability be shown. One practical way of making such a showing is to point to accurate information which they have supplied in the past.

An ordinary citizen who reports a crime stands on a much different footing. He acts with an intent to aid the police in law enforcement because of a concern for society or his own safety. Since the citizen informer often provides information only once, there is little opportunity to establish credibility or reliability in the most common manner—comparison with accurate information provided in the past.

We hold that a valid arrest may be made on information provided by a "citizen informer" and that the informer's prior reliability need not be established before the arrest. The only caveat placed on such a rule is that some of the details of the information must be verified before arrest occurs.

*Id.* at 517–18 (citations omitted).

■ In considering *Erickson,* it is important to bear in mind the distinction between probable cause and reasonable suspicion. *See State v. Moran,* 667 P.2d 734, 735 (Alaska App.1983). The greater the intrusion on the detained person's privacy, the stronger the evidence justifying the intrusion must be. Conversely, less information may establish the reasonable suspicion necessary for a brief investigative stop. Information which would justify an investigative stop would not necessarily justify an arrest. In every case, the trial court must weigh the extent and duration of the "seizure" against the reliability of the information upon which it was based in determining whether the seizure was reasonable.

■ Applying this test in the instant case, we conclude that the stop was justified: the citizen informant was sufficiently credible and the underlying circumstances revealed a sufficient basis for the informant's conclusions.[2] The informant apparently told Jones about the crime out of a sense of civic duty. The informant observed Dionne personally and reached the conclusion that Dionne was intoxicated based on that observation. Because the informant related the information to Jones knowing that Jones was in a position to observe the vehicle to confirm the informant's story, it is unlikely that the informant fabricated the statement. The brevity and lack of detail of the informant's description are likewise explainable by the informant's ability to point out the suspect

2. The parties are in agreement that the informant was a citizen informant.

vehicle in the presence of the officer. Under the circumstances, the informant's information supported an inference that he was telling the truth.

We have previously held that the basis for the informant's conclusions may be established when "the informer indicat[es] that he has personal knowledge." *Effenbeck*, 700 P.2d at 813. In the instant case, it is obvious that the informant had personal knowledge; the informant pointed out the vehicle to Jones only after he had personally observed the vehicle for "some time." Under the circumstances, there was no risk that the information furnished was stale or that the suspect was "no longer dangerous." *Id.* Moreover, although conclusory, the informant's statement that the driver was intoxicated was "the kind of shorthand statement of fact that lay witnesses have always been permitted to testify to in court." *Id.*

Accordingly, given the fact that Jones relied on information provided by a credible citizen informant and that the informant personally observed Dionne immediately prior to contacting the officer, we conclude that the informant's tip provided reasonable suspicion sufficient to justify Jones' investigatory stop of Dionne's vehicle.

The conviction is AFFIRMED.

COATS, J., not participating.