William H. HAMMAN, Appellant,

v.

STATE of Alaska, Appellee.

No. A–5169.

Court of Appeals of Alaska.

Nov. 10, 1994.

Susan M. Crocker, Asst. Public Defender, Kenai, and John B. Salemi, Public Defender, Anchorage, for appellant.

Daniel R. Cooper, Jr., Asst. Dist. Atty., Sharon A.S. Illsley, Dist. Atty., Kenai, and Bruce M. Botelho, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, Judges.

*OPINION*

MANNHEIMER, Judge.

William H. Hamman entered a no contest plea to the charge of driving while his license was revoked, AS 28.15.291, reserving his right to appeal the district court's denial of his motion to suppress the evidence against him. *See Cooksey v. State*, 524 P.2d 1251, 1255–57 (Alaska 1974). Hamman argues that the police had insufficient justification for stopping his car. We affirm Hamman's conviction.

At the evidentiary hearing on Hamman's motion to suppress, Soldotna Police Officer Robbie Quelland testified that around 3:00 a.m. on Sunday morning, May 2, 1993 he

observed Hamman's vehicle traveling on the Sterling Highway. Quelland followed Hamman for one-half to three-quarters of a mile. During this time, Hamman's van was "weaving quite noticeabl[y]" within his lane of travel. The road surface was dry and the lane markers were clearly visible. According to Quelland, Hamman's van swayed back and forth in the lane, as if the driver "wasn't able to maintain a straight path". At one point, Hamman's passenger-side tires crossed over the white fog line and onto the right shoulder of the road; Hamman drove on the shoulder for about thirty feet before he "jerked" the van back into the lane. Suspecting that the driver of the van was intoxicated, based both on the van's movements and on the time of day, Quelland stopped the vehicle. This traffic stop led to Hamman's arrest.

Hamman also testified at the evidentiary hearing. He declared that he could not remember whether he had been weaving or not. Hamman remembered driving onto the shoulder of the road, but he asserted that he purposely did this because he had seen Quelland's headlights behind him and thought Quelland might want to pass his van. The district court denied Hamman's motion to suppress.

■■■■ A police officer can make an investigative stop of an automobile when the officer has a reasonable suspicion that the driver of the automobile is intoxicated. *Ebona v. State*, 577 P.2d 698, 701 (Alaska 1978). The reasonableness of the officer's suspicion is judged in light of the totality of the circumstances known to the officer at the time of the stop. *Ozhuwan v. State*, 786 P.2d 918, 921 (Alaska App.1990); *State v. Moran*, 667 P.2d 734, 736 (Alaska App.1983).

Here, Officer Quelland observed Hamman's van being driven erratically. He saw the vehicle weave within its lane; he also saw the vehicle leave its lane of travel and then jerk back into the lane. Even if Hamman had not left his lane of travel, it was not necessary for Quelland to wait for Hamman to violate a traffic law before stopping him. A police officer need not "see[ ] the person he ultimately stops *do* something dangerous.... It is sufficient if the officer observes facts which lead him to reasonably believe that the person to be stopped *is* dangerous." *Moran*, 667 P.2d at 736 (emphasis in the original).

Having seen Hamman's vehicle repeatedly weave on the highway for a distance of more than a half-mile, Quelland could reasonably conclude that Hamman was a dangerous driver; this reasonable belief justified his investigative stop of Hamman's van. For example, in *Ebona* the officer observed Ebona's car swerving, going from the center line to the right-hand edge, but at no time did Ebona's vehicle leave its proper lane of travel. The supreme court upheld the investigatory stop in spite of the police officer's explicit concession that he never observed Ebona violate a traffic rule and that he watched Ebona make two correct turns. *Ebona*, 577 P.2d at 701 n. 12.

The lateness of the hour (3:00 a.m. on a Sunday), combined with the officer's knowledge that intoxicated drivers are more likely to be on the road at such an hour than at other times, is another circumstance that supports the reasonableness of Quelland's suspicion. We stress, however, that the primary circumstance justifying the stop of Hamman's vehicle was Quelland's observation of Hamman's erratic driving.

The judgement of the district court is AFFIRMED.