Randy C. BEUTER, Appellant,

v.

STATE of Alaska, Appellee.

No. A–3157.

Court of Appeals of Alaska.

Aug. 24, 1990.

Walter Share, Seattle, Wash., and David B. Loutrel, Anchorage, for appellant.

W.H. Hawley, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON,* JJ.

## OPINION

COATS, Judge.

Randy C. Beuter was convicted, based upon his plea of no contest, of misconduct involving a controlled substance in the fourth degree, a class C felony. AS 11.71.-040(a)(2). In entering his no contest plea, Beuter reserved his right to appeal Trial Judge Roy Madsen's denial of his motion to suppress. *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974).

In the summer of 1988, Detective Harvey Mulock and Sergeant Harry Paris of the Kodiak Police Department participated in a special task force investigating drug trafficking in Kodiak. The officers received several anonymous "crimestopper" calls from two informants whom the police designated "344" and "356." Informant 344 called once on June 7 and told the investigators that he had seen "Randy" selling marijuana at 2730 Turner Lane in Jackson's Trailer Court. The caller also stated that Randy got his supplies from Anchorage, that Randy had a broken leg, and that he drove a maroon and white Ford.

The second informant, 356, first contacted crimestoppers on July 15 reported that "Randy" was "dealing in marijuana" at 2735 Turner Lane and stated that he drove a "rust-over-white" Mercury. He said that

Randy was living with Patrick and Lynn Langdon and that he had left Kodiak for Anchorage in order to have an operation on his leg which he injured while skiing. Later that same day, 356 called the police again and identified "Randy" as Randy Beuter. Informant 356 also stated that Beuter "would be returning to Kodiak with a load of marijuana" around July 30.

On July 15, Sergeant Paris ran Beuter's name through the computer and discovered that his driver's license was suspended.

On July 18, Informant 356 called a third time and stated that Beuter would be returning to Kodiak after July 30 and that he always brought two suitcases of "stuff" with him when he returned from Anchorage. He repeated that Beuter's leg was broken from a skiing accident. The officers were already familiar with Beuter, knew his car, and knew that he had a broken leg.

Informant 356 called again on July 25 to tell the investigators that Beuter had arrived in Kodiak that day with a suitcase full of marijuana, that he had been kicked out of his residence in Jackson's Trailer Court, that he was driving a beat-up old white Mercury with a rust-colored top, and that he was using crutches.

On July 26, at approximately 8:00 p.m., Paris and Mulock saw a Mercury which matched the description of Beuter's car parked in front of the Beachcomber's Bar and Liquor Store. A registration check confirmed that the car was registered to Beuter. The officers saw Beuter walking down some stairs using crutches. Beuter got into his car and drove past the officers a short time later. Paris and Mulock followed Beuter and pulled him over. Beuter stopped and got out of the car and, using the car for support, walked to the rear where Paris met him. Mulock walked around the car and looked inside, ostensibly to see if there were any other people in the car. Mulock asked Beuter if he would object to a search of the interior of the car. Beuter refused to consent.

---

* This case was submitted for decision prior to Judge Singleton's resignation.

Mulock testified that he decided to search the car anyway in order to check the "lunge area" for weapons. He stated that he and Paris had adopted this procedure for all vehicle stops connected with drug investigations to prevent detained individuals from having immediate access to a weapon should they return to their car. Mulock found no weapons but he did observe some seeds in the lighter compartment of the ash tray and a partially smoked marijuana cigarette on the floorboard on the passenger side of the front seat. Mulock noticed that the armrest compartment between the two front seats was cracked open about one inch. When he leaned over to feel for weapons under the front passenger's seat, Mulock saw what he thought was the back end of a brass pipe in the compartment. Mulock opened the compartment, picked up the pipe, and noted that it was packed with what appeared to be marijuana. Mulock took the pipe and the roach and showed them to Beuter who stated that he thought the items were legal. The officers informed Beuter that the items were not legal outside the home and placed him under arrest for driving while license suspended (DWLS) and misdemeanor possession of marijuana.

The police handcuffed Beuter and placed him in the police car. Paris then checked with dispatch and confirmed that Beuter's license was still suspended. Mulock asked Beuter if he could search the trunk of the car but Beuter objected. The police then had Beuter's car towed to the police station so that it could be checked by a dog, "Igor," who was trained to detect drugs. At the police station, Igor signalled that drugs were present in the trunk of the car. Paris, Mulock, and Richard Perkins, Igor's handler, testified before Magistrate Anna Moran, who issued a search warrant for the trunk of Beuter's car. The police found several closed containers in the trunk and obtained a second warrant. When the officers opened the containers, they found 1.75 pounds of marijuana packaged in thirteen separate plastic baggies.

Beuter was indicted for misconduct involving controlled substances in the fourth degree. He was also formally charged with DWLS and misdemeanor possession of marijuana while operating a motor vehicle.

Beuter moved to suppress "all evidence obtained directly or indirectly as a result of the warrantless search" of his car. Judge Madsen denied this motion. Beuter then entered a plea of no contest to misconduct involving a controlled substance in the fourth degree but reserved the right to appeal the denial of the suppression motion. The misdemeanor marijuana possession and the DWLS charges were dismissed. This appeal followed and we remand.

■ Beuter first argues that Judge Madsen erred in finding that the police could lawfully stop Beuter for driving while his license was suspended. Beuter argues that the only information which the police had was that Beuter's license had been suspended on July 15, 1988, eleven days before they stopped Beuter. However, we believe that Judge Madsen could properly find that the police had reasonable suspicion to stop Beuter based upon the information that his license was suspended. *See Smith v. State*, 756 P.2d 913 (Alaska App.1988) (authorizing officers to stop a driver based upon reasonable suspicion that she was driving while her license was suspended). In the first place, the record is unclear whether the officers found out the length of Beuter's license suspension when they originally obtained the information that his license was suspended. Taking the evidence in the light most favorable to the state, it is certainly possible that the officers had this information. Even if we assume that the officers did not know the length of Beuter's license suspension, the fact that the police knew that Beuter's license was suspended eleven days previously was sufficient evidence for them to conclude that his license was still suspended at the time they made the stop. In order to lawfully make the stop, the officers were only required to have reasonable suspicion that Beuter's license was suspended. It appears to us that Judge Madsen could properly conclude that the police

had at least reasonable suspicion that Beuter was driving on a suspended license, if not probable cause.

Beuter next argues that the police search of the passenger compartment of his car was illegal. The state responds that the police were justified in searching Beuter's car either as a search incident to an arrest or as a protective sweep for weapons. *See Hinkel v. Anchorage,* 618 P.2d 1069 (Alaska 1980), *cert. denied,* 450 U.S. 1032, 101 S.Ct. 1744, 68 L.Ed.2d 228 (1981) and *Dunn v. State,* 653 P.2d 1071, 1079–83 (Alaska App.1982) (discussing searches incident to arrest); *see also Maryland v. Buie,* —— U.S. ——, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), and *Earley v. State,* 789 P.2d 374 (Alaska App. 1990) (discussing protective sweeps). Judge Madsen found that the marijuana cigarette and marijuana were in "plain view." However, Judge Madsen's findings did not consider whether the officers had any legitimate basis to enter the passenger compartment of Beuter's car, apparently because the judge found that the lawfulness of the police search of Beuter's trunk did not turn on any of the marijuana which the police discovered in the passenger compartment. Judge Madsen appears to have concluded that the crimestopper tips corroborated in part by information already known to the police, were sufficient to allow the police to subject Beuter's car to a canine sniff. Judge Madsen then concluded that the search warrant was adequately supported by information which the police gave the magistrate concerning the tips of the informants, the police corroboration of those tips, and Igor's alert to Beuter's trunk.

In general, we agree with much of Judge Madsen's analysis. Judge Madsen could properly conclude that the police legitimately arrested Beuter for driving while his operator's license was suspended. As we have previously pointed out:

The offense of DWLS is not a minor traffic infraction. It is, instead, a class A misdemeanor for which mandatory minimum jail terms and a maximum term of one year have been established. In this regard, the seriousness of the offense—and, by extension, the legislature's perception of the seriousness of the inherent danger of the offense—ranks close to the seriousness of driving while intoxicated, a crime the supreme court has expressly found to meet the imminent public danger criteria.

*Smith,* 756 P.2d at 916 (citations omitted). Beuter was therefore legitimately detained.

 Judge Madsen could also properly conclude that the police had sufficient information from the confidential informants, some of which the police corroborated, to justify an inspection by a drug detection dog if that inspection were done in a minimally intrusive manner. In determining whether information from a hearsay informant is sufficient to establish probable cause for a search warrant, Alaska applies the *Aguilar–Spinelli* test. *State v. Jones,* 706 P.2d 317, 321 (Alaska 1985). *See Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). This test requires a showing of the informant's basis of knowledge and that the out-of-court informant is credible or that the information is reliable. *Jones,* 706 P.2d at 320–21. Although we do not directly apply this test to determine whether the police have reasonable suspicion, it is useful to determine the adequacy of the information which the police have. *Effenbeck v. State,* 700 P.2d 811, 812–13 (Alaska App.1985); *see also Allen v. State,* 781 P.2d 992 (Alaska App.1989); *Dionne v. State,* 766 P.2d 1181, 1183 (Alaska App. 1989). We conclude that it is reasonable to infer that the informants who called the police had first-hand knowledge of the events which they reported. Informant 344 stated that "Randy" got his supplies from Anchorage and described Randy's automobile. Informant 344 indicated that he had seen Randy sell marijuana to others and that the sales were occurring on a daily basis at Jackson's Trailer Court. Informant 356 indicated that Randy Beuter was dealing marijuana and called several times. This caller seemed to have extensive information about Beuter's descrip-

tion, travel plans, and marijuana delivery scheme. The police independently corroborated this information to a certain degree: they knew that Beuter had an injured leg and knew his car.

The credibility of the informants presents a more difficult question. A person who qualifies as a "citizen informant" is generally presumed to be reliable. Citizen informants are ordinary citizens who aid the police because of their concern for society or for their own safety. *Effenbeck*, 700 P.2d at 813. The law gives less credibility to police informants, who are generally from the criminal milieu. These informants are distrusted because they often provide tips for pay, immunity from prosecution, or other personal motives. *Id.* at 813–14. The anonymous informants in this case do not fall clearly into either of these two groups. However, in *Effenbeck* we pointed out that informants who phone the police under programs which encourage local citizens to report drunk drivers are normally characterized by courts as citizen informants. We noted that in programs which encourage citizens to report anonymously, there is little likelihood that the informants are motivated to give information for pay, immunity from punishment, or other personal advantage which was a reason why courts distrusted hearsay information from police informants from the criminal milieu. *Effenbeck*, 700 P.2d at 814. There is no indication in this case that Beuter pursued any claim that the informants in this case were fictitious. *See id.* at 814. We accordingly conclude that the record establishes that the police had sufficient reasonable suspicion to justify a minimal intrusion by having Beuter's car inspected by a drug-detecting dog.

■ However, the fact that police towed Beuter's car is problematical. The tow amounted to a seizure, an action which is more intrusive than simply subjecting the car to a canine sniff. The issue of whether the seizure of personal property has exceeded the appropriate degree of intrusion was discussed in *United States v. Place*, 462 U.S. 696, 707–10, 103 S.Ct. 2637, 2644–46, 77 L.Ed.2d 110 (1983); *Peschel v. State*,

770 P.2d 1144, 1147–50 (Alaska App.1989). In *Place*, the suspect was waiting in line at the Miami International Airport to buy a ticket to LaGuardia Airport in New York, and his behavior aroused the suspicions of law enforcement officers. The officers approached Place, and he consented to a search of the two suitcases he had checked. However, since his flight was about to leave, the officers did not conduct the search. The officers called federal drug enforcement officers in New York and related their suspicions. When Place arrived at LaGuardia, two federal agents asked him for identification and asked for his consent to search his bags. He refused to allow the officers to search and the officers told him that they were going to take the bags to a federal judge to obtain a search warrant. However, the agents took the luggage to Kennedy Airport and had a dog who was trained to detect drugs sniff the bag. The dog responded to one of the suitcases, approximately ninety minutes after the agents had seized the bags at LaGuardia. The officers then obtained a search warrant and discovered cocaine in Place's bag. 462 U.S. at 698–99, 103 S.Ct. at 2639–40.

The United States Supreme Court found that the police detention of Place's bag for ninety minutes from the time they seized the bag until the time when they exposed it to the drug detection dog exceeded the permissible boundary of a limited investigative seizure which was justified only by reasonable suspicion. *Id.* at 709, 103 S.Ct. at 2645. The Court considered several factors in determining that the detention of Place's luggage exceeded proper limits: (1) the length of time the bag was detained; (2) whether the police diligently pursued their investigation, thereby minimizing the intrusion on fourth amendment interests; and (3) whether the agents accurately informed the defendant of where they were taking the luggage, how long it would be detained, and how they would arrange for the return of the luggage if the dog did not alert to the luggage. 462 U.S. at 709–10, 103 S.Ct. at 2645–46; *see also Peschel*, 770 P.2d at 1147.

*Place* and subsequent cases have focused to a large degree on the impact on the detainee when the police temporarily seized his luggage. The court in *Place* reasoned:

> The person whose luggage is detained is technically still free to continue his travels or carry out other personal activities pending release of the luggage. Moreover, he is not subjected to the coercive atmosphere of a custodial confinement or to the public indignity of being personally detained. Nevertheless, such a seizure can effectively restrain the person since he is subjected to the possible disruption of his travel plans in order to remain with his luggage or arrange for its return.

462 U.S. at 708, 103 S.Ct. at 2645 (footnote omitted); *see also United States v. Puglisi,* 723 F.2d 779 (11th Cir.1984). These cases have emphasized that where the police have reasonable suspicion to detain a person's property in order to subject it to a dog sniff, the police have a duty to minimize the inconvenience to the person whose property is detained. In *Peschel* we stated:

> In circumstances such as these, the police have a special obligation to act diligently to minimize inconvenience to the traveler. This obligation requires the police to use the least intrusive means possible in conducting their investigation. Had the police had probable cause to believe that Peschel's luggage contained contraband, they would certainly have been entitled to seize his luggage until a warrant could be obtained or until exposure to a drug detection dog could be arranged, regardless of the consequent disruption and inconvenience to Peschel. However, acting on reasonable suspicion alone the police could not properly require Peschel to chose between abandoning his luggage and foregoing his scheduled airline travel unless no less intrusive alternative was reasonably available.
> The crucial question in this case is thus whether a reasonable, less intrusive alternative was in fact available.

770 P.2d at 1148 (citations omitted).

■ Beuter was under arrest for driving while his license was suspended. Assuming that the police would normally have arrested Beuter for this offense and would have towed his car to the police station incident to the arrest, it is possible that the additional intrusion of having a drug detection dog inspect Beuter's car while it was at the police station would be a minimal intrusion. The state argues that the police were authorized to tow the car to the police station under 13 AAC 02.345(c). However, that regulation reads as follows:

> When a police officer arrests and detains the driver of a motor vehicle the officer shall impound and remove the vehicle to a place of safety; however, the officer shall inform the driver that he may elect to have another immediately available person, who is legally licensed to drive a motor vehicle, drive or otherwise remove the vehicle as the driver directs. The driver may designate the nearest available garage or tow car operator of his choosing to remove the vehicle. If the driver does not so indicate, the officer shall make the arrangements necessary to remove the vehicle.

Even though Beuter was in custody, under the regulation he still had rights to control what happened to his car.

Judge Madsen did not make any findings regarding whether the police actions were reasonable given the strength of the information which they had and whether a reasonable, less intrusive alternative was available to them. We certainly do not fault Judge Madsen for his failure to make these findings. Beuter brought a complex suppression motion raising numerous issues. The paperwork which he filed in advance of the evidentiary hearing did not raise this issue. However, we believe that Beuter's attorney said enough in his rebuttal argument to preserve this issue.

Because of the way that the issue is raised, the parties and the trial court did not focus on it sufficiently to enable us to properly review it. Where the issue has not been fully considered at the trial court level, we are reluctant to essentially decide it for the first time on appeal without a

trial court finding. *See Peschel*, 770 P.2d at 1149. We therefore remand to the trial court to determine whether the police conduct in this case exceeded the permissible scope of a limited investigative seizure.

We direct the trial court to consider the standards set forth in *Place* and *Peschel*.[1]

The case is REMANDED.

---

1. Beuter also contends that Judge Madsen erred in refusing to compel the state to give discovery concerning the informants who called crimestoppers. However, the record shows that the state opposed discovery on the ground that Beuter had moved for discovery under Criminal Rule 16 but had not filed a challenge of the validity of the search warrant. The state represented that the information which Beuter was requesting was relevant only to the suppression motion and would not be introduced at trial. The state argued that until Beuter challenged the search warrant, the court should deny Beuter's discovery motion without conducting an in-camera hearing. In denying the motion, Judge Madsen agreed with the state. Beuter apparently did not renew his motion when he filed his suppression motion. Under these circumstances it is clear that Judge Madsen's denial of Beuter's discovery request was not dispositive. We therefore decline to reach this issue on appeal. *See Oveson v. Anchorage*, 574 P.2d 801, 803 n. 4 (Alaska 1978).