**Joleen R. RYNEARSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–6108.

Court of Appeals of Alaska.

Dec. 19, 1997.

---

G. Blair McCune, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

William H. Hawley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, C.J., MANNHEIMER, J., and RABINOWITZ, Senior Supreme Court Justice.*

MANNHEIMER, Judge.

Joleen R. Rynearson pleaded no contest to two counts of fourth-degree misconduct involving a controlled substance (possession of Valium and Darvon), AS 11.71.040(a)(3)(B). When Rynearson entered her pleas, she reserved the right to challenge the legality of the police seizure of her bags (which led to the search in which the police found the drugs). *See Cooksey v. State*, 524 P.2d 1251, 1255–57 (Alaska 1974).

In our previous decision in this case, we held that the seizure of Rynearson's bags exceeded the bounds of temporary investigative detention, and that therefore the seizure was justified only if the officers had probable cause to believe that Rynearson's bags contained illicit drugs. *Rynearson v. State*, Memorandum Opinion No. 3068 (Alaska App., January 11, 1995), at 8–9. Because the superior court had not addressed the question of whether there was probable cause for the seizure of the bags, we remanded Rynearson's case to the superior court for further findings on this issue. *Id.*

On remand, the superior court found that the police did have probable cause to seize Rynearson's bags, based on a tip they had received from an anonymous informant. The question now on appeal is whether the superior court's ruling is correct. We agree that the police had probable cause to seize Rynearson's bags, and we therefore affirm her convictions.

The State Troopers contacted Rynearson at the Anchorage International Airport based on information they had received from an anonymous informant.[1] According to this informant, Rynearson would be arriving in Anchorage around midnight on an Alaska Airlines flight from Mexico. The informant supplied the flight number. The informant also provided a physical description of Rynearson and of her luggage. Finally, the informant told the authorities that Rynearson would be carrying drugs—specifically, Valium, Quaaludes, and morphine—and that Rynearson would be carrying these drugs on her person, in her luggage, and concealed in plastic toys.

The troopers followed up on this tip by contacting Alaska Airlines. Airline officials confirmed that a person named Joleen Rynearson would be arriving in Anchorage around midnight on an Alaska Airlines flight from San Francisco, and that this flight had originated in Puerto Vallarta, Mexico. When Rynearson got off the plane, the troopers saw that both she and her carry-on bags matched the informant's description. When Rynearson retrieved her checked luggage, the troopers saw that those bags also matched the informant's description. When the troopers approached Rynearson and questioned her, Rynearson confirmed that she had just arrived from Mexico, and she admitted that she was in possession of prescription Valium.

The record does not reveal whether the same woman contacted both ·the troopers and the DEA, or whether a different informant contacted each agency. The superior court made no finding on this issue. However, because the presence of two cross-corroborating informants would bolster the State's case, *see Stam v. State*, 925 P.2d 668, 671–72 (Alaska App.1996), and because it was the State's burden to establish probable cause, we will assume that there was only one informant.

---

\* Sitting by assignment made pursuant to Article IV, Section 11 of the Alaska Constitution and Administrative Rule 23(a).

1. The troopers received two tips concerning Rynearson. One tip was received in a telephone call from a woman who refused to identify herself. A second tip was received from a federal agent working for the Drug Enforcement Agency. However, the federal agent was simply passing on information that he had received from an anonymous female caller. Thus, all of the troopers' information regarding Rynearson was ultimately based on these two anonymous tips.

■ To decide whether this information constituted probable cause to seize Rynearson's luggage, we apply the test crafted in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). *See State v. Jones*, 706 P.2d 317, 324–25 (Alaska 1985) (holding that, under Alaska law, the *Aguilar–Spinelli* test continues to govern the evaluation of hearsay information offered to support a search or seizure). The *Aguilar–Spinelli* test requires the State to prove two things: first, that the hearsay informant obtained the information in a reliable way; second, that the hearsay informant is trustworthy. *Schmid v. State*, 615 P.2d 565, 574–75 (Alaska 1980).

■ The assessment of probable cause presents a mixed question of fact and law. With regard to the facts, we must accept the facts found by the trial court unless those findings are shown to be clearly erroneous. However, once the facts are determined, the question of whether those facts constitute probable cause is a question of law which a reviewing court determines independently. *LeMense v. State*, 754 P.2d 268, 272–73 (Alaska App.1988).

■ In the present case, the informant did not explain how she obtained her information regarding Rynearson. In fact, the troopers specifically asked the informant how she had obtained her information, and the informant refused to say. However, under *Spinelli*, the detail of a hearsay tip can support the inference that the information was obtained firsthand:

> In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation.

*Schmid*, 615 P.2d at 574 (quoting *Spinelli*, 393 U.S. at 416, 89 S.Ct. at 589, 21 L.Ed.2d at 644).

For example, in *Draper v. United States*, 358 U.S. 307, 309, 79 S.Ct. 329, 331, 3 L.Ed.2d 327, 329–330 (1959), the informant described the defendant and his clothing, described the defendant's gait, stated that the defendant would be carrying a zippered bag, and predicted that the defendant would arrive at the Denver railroad station on either of two dates. The Supreme Court held that this amount of detail established the inference that the informant was speaking from personal knowledge rather than reporting a rumor or making an accusation based merely on Draper's general reputation.

Similarly, we find that the anonymous tip in Rynearson's case was sufficiently detailed to support the inference that the informant was speaking from personal knowledge. The anonymous informant accurately described Rynearson and her luggage, knew that Rynearson was returning to Alaska from Mexico, and predicted that Rynearson would arrive in Anchorage around midnight on a specific day and on a specific Alaska Airlines flight. This amount of detail matches the amount that was declared adequate in *Draper* and *Schmid*.

■ The remaining question is whether the State proved that the anonymous informant was a trustworthy person. There are basically three ways in which an informant can be shown to be trustworthy: by evidence that the same informant has proved reliable in the past, by evidence that independently corroborates the informant's present tip, or by evidence that the informant is among the class of people presumptively deemed credible, such as the "citizen informants" recognized in *Erickson v. State*, 507 P.2d 508, 517–18 (Alaska 1973). *See Carter v. State*, 910 P.2d 619, 623 (Alaska App.1996).

■ In Rynearson's case, the superior court concluded that the anonymous informant was a "citizen informant". From the informant's desire to remain anonymous, the court inferred that the informant had not been motivated by hope of official concession or reward. This was a reasonable inference. However, as we recently explained in *Lloyd v. State*, 914 P.2d 1282 (Alaska App.1996), an informant's anonymity does not, by itself,

qualify the informant as a "citizen informant" for *Aguilar–Spinelli* purposes.

*Lloyd* involved a search warrant application that was based, in substantial part, on information given by a caller to a Crime Stoppers hot line. The State argued that the caller could be deemed a "citizen informant". In support of its argument, the State cited two prior decisions in which this court extended a presumption of credibility to anonymous informants. *See Effenbeck v. State,* 700 P.2d 811 (Alaska App.1985), and *Beuter v. State,* 796 P.2d 1378 (Alaska App.1990). We explained, however, that the State had read too much into *Effenbeck* and *Beuter:*

> [N]either *Effenbeck* nor *Beuter* stand for the proposition that ... informants of unknown or undetermined status can automatically gain citizen informant status by [anonymously] calling a Crime Stoppers number; to adopt such a rule would simply encourage police to channel calls from their regular informants through a Crime Stoppers line. To the extent that [they] are relevant[, *Effenbeck* and *Beuter*] support the conclusion ... that [an] informant['s] status must be determined by a realistic, case-by-case assessment of the informant's probable motives, as they appear from the information properly before the court.

*Lloyd,* 914 P.2d at 1287. We also emphasized that it is the government's burden to demonstrate the informant's status as a citizen informant:

> [A] finding of citizen informant status requires at least some circumstantial showing of intrinsically trustworthy motivation. Credibility is not presumed by default: when the information available ... does not actually identify the informant as an apparently well-meaning citizen, and when it otherwise sheds insufficient light on [the informant's] identity and motive to dispel the underlying concerns of *Aguilar–Spi-*

*nelli,* the informant's status as a citizen informant cannot simply be assumed. *Id.* at 1287.

■ In Rynearson's case, although the troopers did not affirmatively state whether the informant sought or received a reward for her information, the superior court could justifiably conclude that the anonymous informant was unlikely to be motivated by prospects of official concessions or monetary gain. However, little else was known (or, at least, little else was presented) concerning the informant. The troopers testified that the informant (a) was female, (b) wished to remain anonymous, and (c) refused to reveal how she had obtained the information about Rynearson. As in *Lloyd,* the State did not explain "the nature or circumstances of the call", did not tell the superior court "[whether] the call was recorded", and did not provide the court with "any assurance that the report could not have been fabricated." *Lloyd,* 914 P.2d at 1288.

These factors lead us to conclude that the informant in Rynearson's case should not be deemed a citizen informant. Even though an anonymous informant will generally not expect reward or favorable treatment from the authorities, we reiterate what we said in *Lloyd:* an informant's anonymity does not, standing alone, qualify the informant as a citizen informant.[2] In Rynearson's case, the State presented essentially nothing, other than the informant's desire to remain anonymous, to "identify the informant as an apparently well-meaning citizen" or to otherwise "dispel the underlying concerns of *Aguilar–Spinelli*". *Lloyd,* 914 P.2d at 1287. Thus, to justify the seizure of Rynearson's luggage, the record must demonstrate sufficient corroboration of the informant's tip to satisfy the second prong of the *Aguilar–Spinelli* test for a police informant.

■ In Rynearson's case, the police had no evidence that the anonymous informant

---

**2.** Conversely, *Lloyd, Effenbeck,* and *Beuter* together stand for the proposition that anonymity does not necessarily defeat citizen informant status. As demonstrated by the decisions in *Effenbeck* and *Beuter,* if the government has instituted a program that encourages citizens to come forward with information anonymously, and if that

program is set up in a manner that "dispel[s] the underlying concerns of *Aguilar–Spinelli*", then the fact that a person has volunteered information anonymously will not prevent the court from concluding that this person is a citizen informant.

had proved reliable in the past (or even had contacted them in the past). However, the second prong of the *Aguilar–Spinelli* test can be satisfied by independent corroboration of an otherwise untested informant's tip. *State v. Jones,* 706 P.2d at 325; *Atkinson v. State,* 869 P.2d 486, 490 (Alaska App.1994). In the present case, police investigation independently confirmed certain aspects of the informant's tip. Rynearson arrived as predicted on the specified Alaska Airlines flight, and her journey began in Mexico, as the informant had said. The informant accurately described Rynearson's person as well as Rynearson's luggage. Finally, Rynearson told the troopers that she was carrying Valium, one of the three drugs mentioned by the informant—although Rynearson explained that she had obtained the Valium under prescription.

Rynearson discounts this independent corroboration of the informant's tip; she argues that this corroboration consists only of "public facts [and] wholly innocuous details", insufficient to meet the *Aguilar–Spinelli* requirement. *Lloyd,* 914 P.2d at 1288 (quoting *Carter v. State,* 910 P.2d 619, 624 (Alaska App.1996)). We do not agree. The corroborated details included matters that typically would not be known to the general public—Rynearson's flight number, arrival time, and point of origin, as well as the description of her luggage and the assertion that she was carrying Valium. Moreover, in the context of the informant's tip, Rynearson's admission that she was carrying Valium was not a "wholly innocuous" detail; instead, this information was partial corroboration of the informant's primary incriminating assertion—that Rynearson was bringing Valium, Quaaludes, and morphine to Alaska.

▮ The police need not obtain independent corroboration of the incriminatory details of the informant's tip; such a rule was specifically rejected in *Schmid,* 615 P.2d at 577. What the law requires is independent corroboration that "relate[s] to the tip in a way that lends substantial credibility to the report of illegality". *Lloyd,* 914 P.2d at 1286. The police corroboration of the informant's tip in Rynearson's case meets this test.

Based on the foregoing, we conclude that both prongs of the *Aguilar–Spinelli* test were satisfied in this case, and the police therefore had probable cause to seize Rynearson's luggage. Accordingly, the judgement of the superior court is AFFIRMED.