**Darin L. JONES, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–10487.**

Court of Appeals of Alaska.

Sept. 14, 2012.

Dan S. Bair, Assistant Public Advocate, Appeals & Statewide Defense Section, and Rachel Levitt, Public Advocate, Anchorage,

and Darin Jones, in propria persona, Juneau, for the Appellant.

Michael Sean McLaughlin, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and John J. Burns, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

MANNHEIMER, Judge.

Darin L. Jones appeals the superior court's denial of his petition for post-conviction relief. Jones argues that the superior court committed error when it denied his request to be transported from prison to attend the evidentiary hearing on his claims—thus forcing him to testify at the evidentiary hearing by telephone.

For the reasons explained in this opinion, we agree with Jones that the court should have ordered the Department of Corrections to transport him to the evidentiary hearing, so that he could present his testimony in person. This error affected the litigation of two of Jones's claims for post-conviction relief. We therefore vacate the portion of the superior court's order denying those two claims, and we direct the superior court to hold a new evidentiary hearing on those claims.

### Underlying facts

In September 2000, Darin Jones was indicted for first-degree murder in connection with the killing of Shane Rogers. Jones was represented by Assistant Public Advocate Darrel Gardner. On the day that Jones's trial was scheduled to begin (May 2, 2002), Gardner informed the superior court that Jones and the State had reached a plea agreement. Under the terms of this agreement (as described by Gardner and the prosecutor), Jones would plead no contest to a reduced charge of second-degree murder, and there would be a sentencing cap of 25 years to serve, with "suspended time and probation terms ... open to the court".

Upon hearing this description of the plea bargain, the judge presiding over the proceedings—Superior Court Judge Dan Hensley—addressed Jones personally:

> *The Court:* [Y]our lawyer [has] told me that ... you've reached an agreement [with the State]. I'm going to restate what I think the agreement is, [and] then I'm going to ask you if I [described] it correctly.
>
> *Jones:* Yes.
>
> *The Court:* All right.... [Y]ou would plead no contest to [the count] of the indictment which alleges murder in the second degree. [And] if I accepted your plea, the State would dismiss all the other counts.... [Your plea of] no contest to murder in the second degree ... would also establish that you violated your probation in [case number] [3AN–]99–4327.... [Also,] there would be ... an agreement concerning your sentence—which would be [that] the most active jail time I could give you [is] 25 years for both cases, but I would be free to impose additional suspended time if I thought that was appropriate, and [the] length of probation [and the] conditions of probation would be subject to my discretion.... Did I set out the agreement accurately?
>
> *Jones:* Yes, sir.

After further discussion concerning the rights that Jones was giving up by entering this plea, the superior court accepted Jones's plea.

The following September, Judge Hensley sentenced Jones for the second-degree murder conviction and the probation revocation in the earlier felony case. Jones received a composite term of 50 years' imprisonment with 27 years suspended.

About four months later, in January 2003, Jones filed a *pro se* petition for post-conviction relief in which he challenged various aspects of Gardner's representation. A new lawyer was appointed to represent Jones, and this lawyer prepared and filed an amended petition. In its final form, Jones's petition contained nine separate assertions regarding ways in which Gardner's representation of Jones was allegedly incompetent.

Superior Court Judge Eric A. Aarseth scheduled an evidentiary hearing on Jones's petition for July 25, 2008. At that time, Jones was housed at the Red Rock prison in Arizona (under contract with the Alaska Department of Corrections).

In advance of the evidentiary hearing, Jones's attorney filed a motion asking the superior court to order the Department of Corrections to transport Jones to Anchorage, so that Jones could attend the hearing and testify in person, rather than by telephone. However, this motion did not specify what Jones wished to testify about.

There is a statute, AS 33.30.081(e)-(f), that governs this type of request. Under the provisions of this statute, a court may not order the transportation of a prisoner who is a party or witness in a civil action—such as post-conviction relief litigation—unless (1) the court provides a reasonable opportunity for the State to comment on the proposed transportation, and (2) "the court determines ... that the prisoner's personal appearance is essential to the just disposition of the action". The statute directs the court to consider alternatives to the prisoner's personal appearance, including holding a deposition within the prison facility, or having the prisoner give telephonic testimony.

Pursuant to this statute, the Departments of Corrections and Public Safety filed an opposition to Jones's request to be transported from Arizona to Anchorage. In their opposition, the two Departments took the position that if the resolution of Jones's claims turned on Jones's credibility as a witness, then he *should* be brought back to Alaska so that he could testify in person. However, the Departments pointed out that Jones had failed to explain the nature of the testimony he intended to give at the hearing, and thus Jones had failed to explain why his personal appearance was required. Specifically, the Departments argued that Jones had failed to make one crucial allegation: he had failed to allege that any of the issues to be decided at the hearing hinged on his credibility as a witness.

Here is the pertinent passage of the Departments' opposition:

Jones has stated no persuasive reason [why] his personal presence is necessary for the just disposition of this hearing. Although Jones states he will testify, he does not state the substance of his testimony and why he cannot testify telephonically. If the substance of Jones testimony does not call his credibility into question, he should not be transported and [he] should testify telephonically. *See Richard B. v. [Alaska] Dept. of Health [and Social Services]*, 71 P.3d 811, 828 (Alaska 2003) (lack of credibility-dependent testimony supports denial of motion for transport).

Judge Aarseth denied Jones's request to be transported back to Alaska for the evidentiary hearing. However, the judge also rejected the position taken by the Departments of Corrections and Public Safety—the position that Jones's request should be denied because Jones had failed to identify any issue where his personal credibility as a witness might make a difference to the outcome. Instead, Judge Aarseth ruled that it was *irrelevant* whether he, as fact-finder, would be required to assess Jones's credibility as a witness. The judge declared that he could assess Jones's credibility equally well, regardless of whether Jones testified in person or by telephone.

Here is the wording of Judge Aarseth's order:

The Petitioner requests the Court to order his transport[ation] from Red Rock Facility in Eloy, Arizona [back to Alaska] for his ... evidentiary hearing. The Court does not require his presence in the courtroom. The Court can adequately determine Mr. Jones' credibility via telephonic testimony.

The evidentiary hearing on Jones's petition for post-conviction relief was ultimately held on October 10, 2008. Both Gardner and Jones testified at this hearing—Gardner in person, and Jones by telephone. However, the testimony at this hearing was not confined to the nine allegations of incompetence contained in Jones's petition.

In a pre-hearing affidavit filed by Jones, and in his opposition to the State's motion for summary dismissal of the case, Jones claimed that he would not have accepted the

State's proposed plea bargain if he had understood that the 25–year cap specified in the sentencing agreement applied only to his active term of imprisonment (his "time to serve"), and that he might receive an additional suspended term of imprisonment over and above the 25–year cap.

During the October 2008 evidentiary hearing, Jones reiterated these assertions in his telephonic testimony. Indeed, the greater portion of Jones's testimony at the evidentiary hearing was devoted to lengthy and repeated assertions that he misunderstood the terms of his sentencing agreement with the State, and that his sentence exceeded the limits of what he had agreed to.

According to Jones, he believed that the sentencing agreement limited his sentence to a total of 25 years (including both time to serve and suspended time). Thus, according to Jones, his ultimate sentence—25 years to serve plus an additional 27 years suspended—exceeded the sentence allowed under the plea agreement, at least as he understood it.

Jones testified that, immediately after this sentence was imposed, he turned to his attorney (Gardner) and told him that he wanted to withdraw his plea because the sentence was more severe than allowed under the terms of the sentence agreement. According to Jones, Gardner answered that he could not do that—and then Gardner "walked out of the courtroom".

Jones testified that he communicated again with Gardner the next day, telling him that he wanted to "appeal this". Several weeks later, Gardner responded to Jones in a letter dated October 11, 2002. In this letter, Gardner told Jones that he could not appeal his sentence, and that (in Jones's paraphrasing), "[if] you don't like it, file [for] post-conviction relief." [1]

After Jones made these assertions during his telephonic testimony, Judge Aarseth exercised his power to call witnesses (see Alaska Evidence Rule 614), and he re-summoned Gardner to the stand.

Under questioning by Judge Aarseth (and then, under follow-up questioning by both the prosecutor and Jones's post-conviction relief attorney), Gardner testified that his plea discussions with Jones centered on how much time Jones would have to serve—and that the amount of suspended time "really [didn't] matter". According to Gardner, Jones took the offered bargain because it placed a limit of 25 years on his time to serve.

Gardner explained that the State's proposed plea bargain called for Jones's sentence to be limited to 25 years to serve, but that the superior court could impose additional suspended jail time, "up to [a combined total of] 99 years". Gardner declared that he had explained this to Jones.

Gardner conceded that it was *possible* that he did not explicitly talk to Jones about the potential suspended portion of the sentence. But Gardner declared that this scenario was very unlikely: "[G]iven the ... background of the case, and ... how much we went back and forth about the offer, ... [I believe] I would have discussed with him ... the fact that he could get more than the 25 years, but it would be suspended." Gardner added, "I believe that he understood that—that there could be a suspended [component] on top of [the time to serve]."

About six months after this evidentiary hearing, Judge Aarseth issued a written order denying Jones's petition for post-conviction relief. In Sections III and V of that order, Judge Aarseth addressed Jones's claim that he should be allowed to withdraw

---

**1.** The text of the October 11th letter actually reads:

Enclosed is a copy of the final written judgment in your case. Because the court followed the terms of the Rule 11 agreement and imposed a sentence of no more than 25 years actual jail time to serve, there is no right to a sentence appeal. I understand that after your sentencing, you spoke with Leslie Hiebert and complained that you believed that you had received ineffective assistance of counsel. You

do have the right to file an application for post-conviction relief alleging ineffective assistance of counsel. You would be appointed new counsel to represent you on such an application. It is also my understanding that our office has already sent you the appropriate application form for you to fill out and file with the court.

At this point, there is nothing else for me to do on your case. I wish you the best of luck in the future, Darin.

his plea because he did not understand the terms of the sentencing agreement.

Judge Aarseth acknowledged that, according to Jones's testimony at the hearing, Jones believed that his total sentence (including both time to serve and suspended time) would be capped at 25 years. However, Judge Aarseth found that the evidence, taken as a whole, refuted Jones's testimony on this issue. The judge concluded that "[the] evidence showed [that] Mr. Jones understood the agreement"—*i.e.*, understood that the agreement included the possibility of suspended jail time over and above the maximum 25 years to serve.

*Jones's claim on appeal, and the State's defense to that claim*

On appeal, Jones claims that the superior court committed error when it denied his request to be transported to the evidentiary hearing so that he could give his testimony about the plea bargain in person, rather than by telephone. The State responds that Judge Aarseth's ruling on Jones's transportation request was correct—because, *at the time of that ruling,* the judge had no reason to believe that the outcome of the evidentiary hearing would hinge on Jones's credibility as a witness.

The State concedes that if Judge Aarseth had known that Jones intended to testify that he misunderstood the terms of the plea bargain, or that his sentence did not comport with the plea bargain, then the judge should have granted Jones's request to be transported to the evidentiary hearing—because resolution of these claims might hinge on Jones's credibility as a witness. But the State argues that Judge Aarseth had no reasonable way of knowing that these issues would be raised.

The State points out that Jones's petition for post-conviction relief—*i.e.*, the final form of the petition, as drawn up by Jones's new attorney—made no mention of any claim that Jones misunderstood the terms of the plea bargain, or that Jones's sentence did not comport with the terms of the plea bargain. This claim was not developed until the evidentiary hearing itself, when Jones gave his testimony on this subject.

The State further points out that, in Jones's request for transportation to the evidentiary hearing, he asserted that he intended to take the stand at the hearing, but he gave no description of what subjects he intended to testify about. In particular, Jones again made no mention of any claim that he misunderstood the terms of the plea bargain, or that his sentence did not comport with the plea bargain.

Given these circumstances, the State argues, Jones failed to provide Judge Aarseth with any reason to believe that his ultimate resolution of Jones's petition for post-conviction relief might hinge on Jones's credibility as a witness. And because a judge's ruling must be assessed in light of the circumstances known to the judge at the time, the State concludes that Judge Aarseth correctly denied Jones's request to be transported to the evidentiary hearing.

We agree with the State that, at the time Judge Aarseth made his ruling, Jones had not given the judge reasonable notice that he intended to assert that he misunderstood a material element of the plea agreement, or (alternatively) that his sentence exceeded the bounds of the plea agreement.

But as we have already explained, when Jones presented his testimony at the evidentiary hearing, it became clear to everyone that this was Jones's primary claim. Even though Jones's testimony about misunderstanding the plea bargain did not relate to any of the claims of ineffective assistance of counsel articulated in Jones's petition, Judge Aarseth did not rule that Jones's testimony was irrelevant and should be disregarded. Instead, the judge effectively allowed Jones to supplement his claims to include this new one. Indeed, after Judge Aarseth heard Jones's testimony on this issue, the judge took it upon himself to call Gardner to the witness stand again, so that Gardner could address Jones's assertions concerning the sentencing provisions of the plea agreement, and Jones's understanding of these sentencing provisions.

Moreover, when Judge Aarseth issued his final decision on Jones's petition, the judge addressed this plea bargaining issue, and he

resolved this issue against Jones—because he found that the evidence, taken as a whole, refuted Jones's testimony.

In other words, even though Jones's testimony about the sentencing agreement did not relate to any of the claims presented in his petition for post-conviction relief, Judge Aarseth allowed Jones to litigate this new claim, and the judge resolved this claim on the merits. In arriving at his decision, Judge Aarseth expressly rejected Jones's testimony on this issue. The judge concluded that, in light of the evidence as a whole, Jones's testimony was not credible.

As we explained earlier, when Jones made his request for transportation to the evidentiary hearing, the Departments of Corrections and Public Safety took the position that Jones *should* be transported to the hearing if his credibility as a witness was going to be an issue. And now, on appeal, the State concedes that this is the rule that governs requests for transportation.

If Judge Aarseth had shared this view of the matter, then we have little doubt that the judge would have declined to adjudicate the sentencing issue based on Jones's telephonic testimony. Instead, he would have interrupted the proceedings and would have ordered that Jones be brought to the hearing.

But Judge Aarseth did not deny Jones's request for transportation on the basis suggested by the Departments of Corrections and Public Safety. That is, the judge did not deny Jones's request on the basis that none of the issues to be litigated turned on Jones's credibility as a witness. Rather, Judge Aarseth denied the request for transportation because he believed that he could adequately evaluate Jones's credibility regardless of whether Jones testified in person or by telephone—and that it was therefore *irrelevant* whether any of the issues to be litigated turned on Jones's credibility as a witness.

Our dissenting colleague, Judge Bolger, argues that it was incumbent on Jones to renew his request for transportation once it became clear that the issues litigated at the hearing—in particular, the question of Jones's alleged understanding of the sentenc-ing agreement—would turn on Jones's credibility as a witness.

But given the nature of Judge Aarseth's ruling, it would have been pointless for Jones's attorney to seek reconsideration on the ground that Jones's credibility as a witness was now clearly in question. Judge Aarseth's response to such a motion for reconsideration would presumably have been the same—that it was irrelevant whether any of the issues to be litigated turned on Jones's credibility as a witness, because the judge could adequately evaluate Jones's credibility even if he testified by telephone.

■ For this reason, we do not believe that Jones waived this issue by failing to renew his request for transportation at the evidentiary hearing.

Our remaining task is to decide whether it was error not to bring Jones back to Alaska for the evidentiary hearing after it became clear that the court's resolution of the major issue litigated at that hearing (Jones's understanding of the sentence bargain) would turn on Jones's credibility as a witness.

*When must a defendant be allowed to testify in person at an evidentiary hearing on a petition for post-conviction relief?*

■ Alaska law supports the State's general position that a defendant should be transported to a post-conviction relief trial or evidentiary hearing if the defendant shows that the outcome of the litigation might hinge on their credibility as a witness.

In *Richard B. v. Alaska Department of Health and Social Services*, 71 P.3d 811 (Alaska 2003), one of the issues presented on appeal was whether the superior court abused its discretion under AS 33.30.081 when the court refused to order the Department of Corrections to transport a prisoner to Bethel so that he could testify in person at a proceeding to terminate his parental rights. *Id.* at 826.

■ On appeal to the supreme court, the State argued that the prisoner had failed to show that the superior court abused its discretion because the prisoner had failed to identify any instance where the superior court had found his testimony less than cred-

ible, or where the superior court's assessment of the prisoner's credibility as a witness materially affected the outcome of the trial. *Id.* at 827.

The supreme court declared that "where the credibility of a party or witness will likely affect the outcome of the case, it will be important for the [trial] court to see and hear the person testify." *Ibid.* On this issue, the court quoted its earlier decision in *Whitesides v. Alaska Division of Motor Vehicles,* 20 P.3d 1130, 1137 (Alaska 2001):

> [T]he potential for empathy and nuanced understanding is much greater in person-to-person communications than in any of the various forms of telecommunicating. Likewise, when a party is denied an in-person hearing before a trier of fact, there is a risk that the party will be less able to convey the message that his story is the truth.

*Richard B.,* 71 P.3d at 827–28.

However, the supreme court concluded that, under the circumstances of Richard B.'s case, the superior court's refusal to order him brought to Bethel was not an abuse of discretion—because, even though Richard B. expressed a desire to be present at the trial, and to testify at the trial, he "did not [identify] what specific information he intended to convey through his testimony that would depend on his credibility, nor did he present the court with any basis on which to believe that the outcome of the case would depend upon his presence." *Id.* at 828. The supreme court held that, "[w]ithout a specific offer of credibility-dependent evidence[,] or a [specification] ... of any material issues he intended to dispute, the [superior] court was well within its authority to deny Richard's motion for transport." *Ibid.*

The supreme court expressed the same view of the matter in *Seth D. v. Alaska Department of Health and Social Services,* 175 P.3d 1222 (Alaska 2008). Again, the question presented on appeal was whether the superior court abused its discretion under AS 33.30.081 when it refused to order the Department of Corrections to transport a prisoner to the site of a parental rights termination trial, so that the prisoner could give live testimony at the trial. *Id.* at 1226.

By coincidence, Seth D. completed his sentence while the termination trial was still in progress, so he was able to attend the last two days of the trial and testify in person. *Ibid.* The supreme court concluded that, given this fact, even if the superior court abused its discretion in not ordering the Department to transport Seth to the trial, the error was harmless. *Id.* at 1229. The supreme court cautioned, however, that the superior court's denial of Seth's request to be transported to the trial would have been "problematic" if Seth "[had] not been fortuitously released from prison mid-trial." *Ibid.*

Two members of the court—Justices Fabe and Carpeneti—were more forceful in their condemnation of the superior court's ruling:

> Our case law makes clear that the trial court erred in ruling that Seth's telephonic testimony "was adequate for a fair trial." Only the fortuity of Seth D.'s release from prison before the conclusion of his hearing rendered the superior court's decision to deny transport harmless error.

*Id.* at 1233.

The supreme court's decisions in *Richard B.* and *Seth D.* are consistent with its earlier decision in *Fajeriak v. State,* 520 P.2d 795 (Alaska 1974), and this Court's decision in *State v. Jones,* 759 P.2d 558 (Alaska App. 1988), both dealing with the question of whether a prisoner seeking post-conviction relief should be allowed to personally attend the trial or evidentiary hearing. In *Fajeriak,* the supreme court stated that a prisoner seeking post-conviction relief must be allowed to testify in person when "[the prisoner's] testimony will be material and ... founded on personal knowledge". 520 P.2d at 803. And in *Jones,* this Court echoed the holding in *Fajeriak;* we stated that "[i]f the disputed issues involve facts within the personal knowledge of the applicant, the applicant's presence is required[.]" 759 P.2d at 566.

See also *Henry v. State,* 861 P.2d 582, 592–94 (Alaska App.1993), where this Court held that, despite the telephonic participation provisions of Criminal Rule 38.1(a), it is unlawful for a judge to conduct a sentencing by telephone when the defendant objects and as-

serts the right to stand face-to-face with the judge.

Based on these prior decisions, we conclude that a defendant must be transported to a post-conviction relief evidentiary hearing when the defendant intends to testify at the hearing and the outcome of the hearing may turn on the defendant's credibility as a witness.

*Conclusion*

Of the several issues litigated by Jones in these post-conviction relief proceedings, resolution of two of the issues hinged to some degree on Jones's credibility as a witness: (1) the controversy regarding the terms of the sentencing agreement (the controversy which we have described at some length in this opinion), and (2) a separate claim that Gardner did not inform Jones of his right to seek appellate review of the superior court's denial of a pre-sentencing motion to withdraw his plea.

Accordingly, we VACATE the superior court's decision of these two issues, and we direct the superior court to hold a new evidentiary hearing on these issues, with Jones given the opportunity to testify in person at the hearing.

With respect to Jones's other claims for post-conviction relief, the judgement of the superior court is AFFIRMED.

BOLGER, J., dissenting.

I disagree with the decision to address the issue identified in the lead opinion, because Jones failed to preserve this issue for appellate review. At the time Jones made his motion for a transport order, he did not make any showing that he had material testimony to offer on the issue he now relies upon.

Jones's amended application for post-conviction relief alleged that his trial attorney committed several acts of malpractice, including negligent handling of Jones's mental health issues, failure to notify Jones that he could appeal a motion to withdraw his plea of no contest, and failure to file a motion to suppress Jones's confession. These were the only claims that were at issue when Jones filed his one-page motion for a transport order. The application did not include any claim that Jones should be allowed to withdraw his plea because he did not understand the sentencing agreement. On the contrary, the application affirmatively alleged that Jones's sentencing agreement "capped the time *to be served* at twenty-five years." (Emphasis added).

Under AS 33.30.081(f), a prisoner is not entitled to be transported for a post-conviction hearing unless he establishes that his "personal appearance is essential to the just disposition of the action." To satisfy this burden, a prisoner must "demonstrate to the court what specific information he intend[s] to convey through his testimony that w[ill] depend on his credibility" and the "basis on which to believe that the outcome of the case w[ill] depend upon his presence."[1] The court must weigh a variety of factors to determine whether to grant such a request:

> In making its determination the trial court may take into account the costs and inconvenience of transporting a prisoner from his place of incarceration to the courtroom, any potential danger or security risk which the presence of a particular inmate would pose to the court, the substantiality of the matter at issue, the need for an early determination of the matter, the possibility of delaying trial until the prisoner is released, the probability of success on the merits, the integrity of the correctional system, and the interests of the inmate in presenting his testimony in person rather than by deposition.[2]

A prisoner is not entitled to transportation unless he shows that he has testimony to offer on a material issue.[3]

1. *Richard B. v. State, Dep't of Health and Soc. Servs.*, 71 P.3d 811, 828 (Alaska 2003).

2. *Id.* at 827 (quoting *B.H. v. W.S. (In re F.H.)*, 283 N.W.2d 202, 209 (N.D.1979)).

3. *Id.* at 832; *see also McCracken v. State*, 518 P.2d 85, 92 (Alaska 1974) (noting that "federal courts have always possessed the power to refuse to compel the production of a prisoner at an evidentiary hearing on the prisoner's petition for

The statute also requires the requesting party to pay for the costs of transportation before the prisoner is transported.[4] If the requesting party is the prisoner, and the court concludes that he is indigent, then he may be required to advance only a portion of those costs.[5]

Jones did not make any offer of the testimony he intended to present at the post-conviction hearing. Jones's one-page motion did not mention AS 33.30.081(f) or discuss any of the factors the court was required to consider. In particular, Jones's motion did not notify the court that Jones wanted to testify to support a claim that he did not understand his sentencing agreement. The superior court judge had no reason to identify this issue as a material issue because Jones did not raise this claim in his amended application. In my opinion, Jones has failed to preserve this issue for appellate review.

The lead opinion forgives Jones's waiver because Jones chose to give telephonic testimony on this sentence-bargain issue at the post-conviction hearing, the issue was contested by the State, and it was decided by the judge. The lead opinion thus shifts the burden to the trial judge to renew Jones's pretrial motion for transportation *sua sponte*. This shift is contrary to the rule this court has followed on many prior occasions. If circumstances change during the trial, it is the *movant's* burden to renew any unsuccessful pretrial motions.

For example, in *Pease v. State*, the defendant made an unsuccessful pretrial motion for severance.[6] On appeal, the defendant relied on the trial evidence to support his claim that he had been prejudiced.[7] This court held that "if circumstances arise during trial that undermine the judge's earlier decision" the defendant has a duty to renew the motion during trial "to allow the trial judge to consider the actual circumstances as they arise at trial."[8] Because the defendant did not renew his motion at trial, this court limited its appellate review to the information presented with the defendant's original pretrial motion.[9]

Likewise, in *Waters v. State*, the defendant made an unsuccessful pretrial motion to suppress his confession.[10] This court explained why the defendant was not entitled to take advantage of trial evidence to support his pretrial motion:

> Although we have indicated that evidence developed at trial can be used to *support* the lower court's ruling on a pre-trial motion, ... such evidence can not be used to *attack* a pre-trial ruling unless the proponent of the motion affirmatively asks the trial judge to re-examine the pre-trial ruling in light of the newly-developed evidence.... Therefore, if a party believes that later-developed evidence has shown that the trial court's pre-trial findings are erroneous, it is that party's duty to apprise the trial court of the situation and affirmatively seek a re-determination of the pre-trial issue.[11]

This explanation thus supports the general rule of waiver: "The normal rule is that, absent plain error, a party challenging a trial court's ruling may not rely on an argument or on evidence that was not brought to the trial court's attention at the time the trial court made its ruling."[12]

post-conviction relief when his physical presence was not necessary").

4. AS 33.30.081(g).

5. AS 33.30.081(h).

6. 54 P.3d 316, 322 (Alaska App.2002).

7. *Id.*

8. *Id.*

9. *Id.*

10. 64 P.3d 169, 170–71 (Alaska App.2003).

11. *Id.* at 171 (emphasis in original).

12. *Id.; see also Khan v. State*, 204 P.3d 1036, 1039 (Alaska App.2009) (holding that the defendant waived the right to appeal his pretrial motion for a change of venue by his failure to renew the motion after jury selection), *rev'd on other grounds*, 278 P.3d 893 (Alaska 2012); *Beuter v. State*, 796 P.2d 1378, 1384 (Alaska App.1990) (holding that a defendant waived his appeal regarding an unsuccessful motion to compel discovery when he failed to renew his request when the discovery became relevant).

In this case, the lead opinion concludes that it would have been pointless for Jones to renew his pretrial motion for transportation because of the wording of the pretrial order. But I expect that the superior court judge would have worded his pretrial decision differently if Jones had made an adequate motion with a citation to the procedures required under AS 33.30.081(f), a discussion of the factors listed in *Richard B.*,[13] and an offer of proof of the testimony for which his transportation was requested.

Moreover, if Jones had renewed his request for a transportation order during the post-conviction hearing, then the judge could have made a decision on the motion based on a full review of the circumstances at that time, including the nature of Jones's testimony, the timing of the request, and the expense of the requested transportation. In my opinion, it is inappropriate to address the issue at this point, because these circumstances have never been presented to the superior court for review.

---

**13.** 71 P.3d at 827.