**Antonio WILLIAMS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–9109.**

Court of Appeals of Alaska.

July 28, 2006.

Lori M. Bodwell, Assistant Public Advocate, Fairbanks, and Joshua P. Fink, Public Advocate, Anchorage, for the Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and David W. Márquez, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

### OPINION

COATS, Chief Judge.

This case raises the issue of whether the police had reasonable suspicion to stop a car in which the defendant, Antonio Williams, was riding. We uphold Superior Court Judge Mark I. Wood's ruling that the police had reasonable suspicion to initiate the stop.

*Factual and procedural background*

On May 4, 2004, Fairbanks Police Officer Bruce Barnett of the Alaska Bureau of Alcohol and Drug Enforcement received a phone call. The caller, a woman, stated that three individuals, Antonio Williams, Teffin Goss, and Courtney Guy, were distributing cocaine and marijuana in the Fairbanks area. She

stated that these individuals were transporting drugs into Fairbanks from Anchorage in rented cars. The men would use the name "Dequan Thomas" when they rented the cars. According to the caller, the men would make round trips to Anchorage from Fairbanks approximately once a week.

The next day, May 5, the same informant called Officer Barnett again. She stated that Antonio Williams and Teffin Goss had rented a light green Mercury Mountaineer sport utility vehicle and were currently in Anchorage. She said she had seen Williams, Goss, and a third person she was unable to identify. She stated that the men had rented the vehicle under the name Dequan Thomas. The woman stated that she knew the men were involved in drug trafficking because she had seen them in the past with narcotics and that she had told them that what they were doing was wrong. She told Officer Barnett that the men were bringing a large amount of drugs back to Fairbanks and distributing them.

Officer Barnett then contacted the Budget Rental Car Agency in Fairbanks. He asked an employee if anyone named Dequan Thomas had rented any vehicles. The employee recognized the name Dequan Thomas. She stated that "they" had rented cars from Budget in the past for trips to Anchorage. When the officer asked how the employee knew the renter's destination, the employee stated that it was because of the mileage on the car's odometer. The employee stated that Budget, however, did not rent Mercury Mountaineers but that Hertz rented Mercury Mountaineers.

Officer Barnett then contacted the Hertz Rental Car Agency. An employee of Hertz told Officer Barnett that the company would not release information about its rentals without a subpoena. The officer obtained a subpoena for the Hertz Rental Car records. Hertz turned over a rental agreement in the name of Dequan Thomas. According to the rental agreement, Dequan Thomas had rented a light green Mercury Mountaineer, license place number EMT–565, on April 28, 2004. The car was due back at approximately 7:00 p.m. on May 6, 2004. Officer Barnett checked the license plate number with AP-

SIN (Alaska Public Safety Information Network) to match the license plate with the vehicle.

Meanwhile, Officer Barnett received a recorded message on his answering machine from the anonymous informant who had originally contacted him. The informant stated that she had received a telephone call from one of the individuals, and that he had told her that they had left Anchorage at approximately 4:30 p.m. and were heading towards Fairbanks. The individual told her that they had the cocaine with them. She said the individual had told her that they rented the car from Hertz using a Visa card. Officer Barnett checked the paperwork on the Hertz rental agreement. The agreement showed that a Visa card was used to rent the Mercury Mountaineer. The caller told Officer Barnett that she was providing this information because she was concerned about the people who purchased the cocaine.

Officer Barnett and other police officers calculated the amount of time it would take the men to drive from Anchorage to Fairbanks. They set up surveillance along the highway. Within the time period that they had calculated, they saw the light green Mercury Mountaineer with license place number EMT–565. It was occupied by three men. The officer followed the Mercury Mountaineer a short distance, and had an Alaska State Trooper in a marked police car conduct a traffic stop of the Mercury Mountaineer. As Officer Barnett approached the Mercury Mountaineer, he noticed the odor of marijuana coming from the car. The officer then had a drug-sniffing dog check the car. The dog gave an alert that indicated the presence of drugs in the car. Officer Barnett then detained the individuals, identified as Williams, Goss, and Bobby Sims, and obtained a search warrant.

When the police searched the car, they found twelve plastic bags containing cocaine. They also found a .380 caliber handgun.

The State indicted Williams, Goss, and Sims for misconduct involving a controlled substance in the third degree (possession of cocaine with intent to distribute) and misconduct involving weapons in the second degree

(possession of a firearm during the commission of a felony drug offense).

Williams, Goss, and Sims filed a motion to suppress the evidence that the police found inside the Mercury Mountaineer. Superior Court Judge Mark I. Wood conducted an evidentiary hearing and denied the motion to suppress. Williams pleaded no contest to the two charges, preserving his right to appeal Judge Wood's denial of his suppression motion. He has appealed to this court. We affirm Judge Wood's decision denying the motion to suppress.

*Why we conclude that Officer Barnett had reasonable suspicion to conduct an investigative stop*

■ In Alaska, the police may conduct an investigative stop only when they have reasonable suspicion that imminent public danger exists or that serious harm to persons or property has recently occurred.[1] When the police have reasonable suspicion that a person is transporting illegal drugs for distribution, the test is met and an officer may conduct an investigative stop.[2]

■ Reasonable suspicion may be based on a tip from an informant.[3] In general, the circumstances surrounding the informant's tip should provide the officer with reasonable grounds to believe that the informant is a credible person and that the informant has first-hand knowledge of the events she is reporting.[4] This is analogous to the *Aguilar–Spinelli* test, which we use to determine whether a search warrant that is based on hearsay establishes probable cause.[5] Although the *Aguilar–Spinelli* test is not controlling when the issue is reasonable suspicion, it is a useful tool for analyzing the adequacy of an informant.[6]

■ It appears that Judge Wood used an *Aguilar–Spinelli* analysis when he ruled that the police had reasonable suspicion to stop the Mercury Mountaineer. He pointed out that the anonymous informant said that she was reporting her personal observations. She stated that she had previously seen the men with the drugs. Judge Wood pointed out that the informant had given the police several details about what the men were doing, and the police corroborated much of the information. He pointed out that the informant even knew the time that the three men left Anchorage on their way to Fairbanks. He noted that it was suspicious that the defendants had made multiple trips to Anchorage. And he concluded that it was suspicious that they were renting the car under an assumed name. He concluded that the police had reasonable suspicion to stop the car. Once the police stopped the car, they smelled marijuana. This provided probable cause for the police to obtain a search warrant. Judge Wood denied the motion to suppress.

We agree with Judge Wood's decision. The informant certainly indicated that she had first-hand knowledge that the defendants were selling drugs. She claimed to have seen the drugs and claimed to have told the defendants that what they were doing was wrong. She also stated that the defendants made weekly trips to Anchorage, returning with drugs to sell in Fairbanks. She stated that the defendants were currently on a trip to Anchorage to obtain drugs and had rented a light green Mercury Mountaineer using the name of Dequan Thomas. She stated that they had used a Visa card to rent the car. The informant therefore showed an intimate knowledge of the defendants' drug-selling activities. The police corroborated the details of the defendants' obtaining of the rental car. The informant then called, claiming that one of the men had called and told her that they

---

1. *Pooley v. State*, 705 P.2d 1293, 1307 (Alaska App.1985) (citing *Coleman v. State*, 553 P.2d 40 (Alaska 1976)).

2. *Id.*

3. *Dionne v. State*, 766 P.2d 1181, 1183 (Alaska App.1989).

4. *Id.*

5. *Beuter v. State*, 796 P.2d 1378, 1381 (Alaska App.1990). *See Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

6. *Mix v. State*, 893 P.2d 1270, 1272 (Alaska App. 1995).

had the drugs and had left Anchorage at 4:30 p.m. The police watched the highway, and the Mercury Mountaineer arrived at a time consistent with the schedule that the informant had reported. At this point, the police had sufficiently corroborated the informant's tip to initiate an investigative stop of the Mercury Mountaineer. Williams does not dispute the fact that, when the police approached the car, they smelled marijuana and ultimately established probable cause to search the car and arrest Williams.

Williams argues that his case is similar to *Allen v. State*,[7] where we reversed a trial court's denial of a motion to suppress. In *Allen*, an anonymous caller reported to the police that someone was selling drugs from a green 1972 Ford Suburban. The caller provided the police with the license plate number of the car. Acting on the report, less than half an hour later, a Fairbanks police officer pulled over the car. As a result of the stop, the driver, Allen, was charged with driving with a suspended operator's license. Allen moved to suppress, arguing that the informant did not provide sufficient details about the alleged drug transactions to allow the police to stop his car. The district court judge denied Allen's motion to suppress. On appeal, we concluded that the police did not have reasonable suspicion to stop Allen.[8] Allen's case presents an instructive contrast to Williams's case. The anonymous tip in *Allen* did not provide the police with any information about how the caller concluded that Allen was selling drugs. The caller might have been reporting hearsay information, or the caller's conclusion that Allen was selling drugs might have been mistaken even if the caller did actually observe something. In Williams's case, the informant reported information, which, if believed, showed that she had intimate detailed information about Williams's drug activities.

*Conclusion*

We conclude that the police had reasonable suspicion to conduct an investigative stop of the Mercury Mountaineer in which Williams was riding.

The judgment of the superior court is AFFIRMED.

---

7. 781 P.2d 992 (Alaska App.1989).

8. *Id.* at 994.